Stephen S. BUSHKO, Plaintiff-Appellant,
v.

MILLER BREWING COMPANY, Defendant-
Respondent-Petitioner.

Supreme Court

*No. 84–2130. Argued September 4, 1986.—Decided November 25, 1986.*

(Also reported in 396 N.W.2d 167.)

For the defendant-respondent-petitioner there were briefs by *George K. Whyte, Jr., David R. Cross, Robert H. Duffy* and *Quarles & Brady*, Milwaukee, and oral argument by *Mr. Whyte.*

For the plaintiff-appellant there was a brief by *Walter F. Kelly* and *Sutton & Kelly*, Milwaukee, and oral argument by *Walter F. Kelly.*

STEINMETZ, J.   The issues raised by the parties on this review are several; however, we find the controlling issue to be whether the narrow cause of action for wrongful discharge established in *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983) encompassed the discharge of an employee for complaining about public policy matters.

Stephen S. Bushko was first employed by Miller Brewing Company in 1978 as a warehouse supervisor in Miller's Fort Worth, Texas, plant. He transferred to Miller's container plant in Milwaukee in 1981, where Miller manufactures its beer cans, and worked as a supervisor on the can line. He was terminated in April, 1982.

Bushko concedes that he was not terminated for refusing to violate any public policy.[1] Instead, Bushko claims he was terminated because he complained about Miller's policies in three areas—plant safety, hazardous wastes and "honesty."

Bushko's plant safety claim arose from a safety meeting he and other supervisors had with the plant production supervisor, Kenneth Michaelchuck, on March 3, 1982. Bushko challenged Michaelchuck's position that safety was the number one priority in the plant. Bushko argues this challenge directly and responsibly raised a matter of fundamental public importance, as recognized by sec. 101.17, Stats.[2] However, Bushko admitted that Michaelchuck's angry response was because "apparently Mr. Michaelchuck felt that we were badgering him, or, you know, harassing him . . . ." Kurt Hoffman, another supervisor at the meeting, confirmed in his deposition that "the general feeling was that Michaelchuck was kind of the new kid on the block . . . and we tugged his chain a little." Bushko does not allege

---

[1] Although Bushko's complaint stated that he was discharged for "refusing to go along with" policies and procedures allegedly against public policy, a review of the record indicated, and Bushko conceded, he was never commanded, requested or otherwise directed imperatively to violate any Wisconsin statute or constitutional provision.

[2] Sec. 101.17, Stats., provides as follows:

> "101.17. *Machines and boilers, safety requirement.* No machine, mechanical device, or steam boiler shall be installed or used in this state which does not fully comply with the requirements of the laws of this state enacted for the safety of employes and frequenters in places of employment and public buildings and with the orders of the department adopted and published in conformity with ss. 101.01 to 101.25. Any person violating this section shall be subject to the forfeitures provided in s. 101.02(12) and (13)."

that he was discharged for refusing to operate an unsafe machine.

Bushko's second claim centers on protests he made to Walter Brown, his immediate superior, and George Lensinger about hazardous waste disposal procedures, for which Lensinger is responsible. However, Bushko's testimony establishes his superiors were content with his work and receptive to his complaints. Bushko admitted that his two immediate supervisors were pleased with his work, commended his efforts, responded to his concerns, and worked with him as a team to solve Miller's waste problems. Bushko does not allege that he was discharged for refusing to perform any illegal hazardous waste handling or illegal disposal procedure.

Bushko's final claim concerns his charges of dishonest conduct by other supervisors. These accusations involved falsification of personnel and expense records. Bushko does not claim he was ever asked to falsify or lie about records.

On April 10, 1982, Bushko left work before his shift ended while some of the hourly employees he was supposed to be supervising were still working. He left without notifying them or anyone in management. By his own admission, he left at least 20 minutes early.

Following an investigation of the incident, Brown recommended to Michaelchuck, Brown's immediate superior, that Bushko be discharged. Michaelchuck agreed and recommended discharging Bushko for leaving his crew unsupervised without notifying anyone and for exhibiting a complete lack of concern for the gravity of his actions. Michaelchuck received approval for the termination through Joe Adamski, the plant industrial relations manager. Miller gave Bushko the option of being discharged or resigning. Bushko resigned.

This action was commenced by Bushko on September 11, 1982, in Milwaukee county circuit court. The defendant, Miller Brewing Company, moved for summary judgment on July 30, 1984. Oral arguments on the motion were heard before the Honorable William J. Haese and on that date, Miller's motion for summary judgment was granted. Judgment was entered on October 18, 1984.

The court of appeals, in an unpublished decision, reversed and remanded the case for trial. The court of appeals held that a termination based upon an employee's exercise of free speech in support of employee safety, correct handling and disposal of hazardous waste and prohibiting criminal activity at the place of employment was condemned by *Brockmeyer*. The court of appeals erroneously held: "Under *Brockmeyer* all an employee need do to state a wrongful discharge cause of action is to identify and allege a clear and specific public policy, as set forth in the Wisconsin constitution and statutes." In *Brockmeyer*, 113 Wis. 2d at 572-73, we held:

> "We have concluded that in the interests of employees, employers and the public, a narrow public policy exception should be adopted in Wisconsin. Accordingly, we hold that an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law."

However, we went on to state with specificity in *Brockmeyer* as follows:

> "We intend to recognize an existing limited public policy exception. *An employer may not require an employee to violate a constitutional or statutory provision with impunity. If an employee refuses to act in*

140

*an unlawful manner, the employer would be violating public policy by terminating the employee for such behavior." Id.* at 573. (Emphasis added.)

The court of appeals incorrectly held that activity merely consistent with a public policy provides a basis for a wrongful discharge cause of action. *Brockmeyer* requires that the discharge be for refusing a command to violate a public policy as established by a statutory or constitutional provision.

The trial judge properly analyzed and applied the *Brockmeyer* limited cause of action and granted a summary judgment motion for the defendant. The court of appeals incorrectly made the employer's intent in the discharge a material fact in stating why the motion for summary judgment should not have been granted. The plaintiff is not required under *Brockmeyer* to prove the employer had an evil intent in the discharge. Likewise, gratuitous allegations or other evidence of evil intent will not save a cause of action from defendant's motion for summary judgment *if* the elements required by *Brockmeyer* are not present. *Brockmeyer* requires an employee allege and attest that he was discharged for refusing to violate a constitutional or statutory provision. Although *Brockmeyer* was intended to provide relief for the employee who was a victim of evil intent, it did so under very limited circumstances. *Brockmeyer* defined the cause of action and the standards for summary judgment in such a way that the trial judge need not inquire into the intent of the employer. If "intent" were a proper inquiry at the summary judgment stage, no wrongful discharge action could be disposed of at summary judgment.

141

There is no claim that Bushko was required to violate a constitutional or statutory provision. The plaintiff's counsel acknowledged at oral argument that: "Steve Bushko was not ordered by his employers, and we conceded it from the beginning, to do anything that violates the positive law of the State of Wisconsin."

Bushko mistakenly relies on the following language from *Brockmeyer*:

> "Once the plaintiff has demonstrated that the conduct that caused the discharge was consistent with a clear and compelling public policy, the burden of proof then shifts to the defendant employer to prove that the dismissal was for just cause." *Id.* at 574.

An employee who refuses a command to violate public policy is acting consistent with public policy. However, if the employee of his own volition acts consistently with public policy, he does no more than obey the law. Such consistent action, without an employer's command to do otherwise, is merely "praiseworthy" conduct.

In *Brockmeyer* we recognized that there would be continuing efforts to expand the narrow public policy cause of action defined by the court and stressed the use of summary judgment to screen cases without clogging trial court calendars. We stated:

> "[T]he public is protected against frivolous lawsuits since courts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy." *Id.* at 574.

Public policy in the context of the *Brockmeyer* statement of a cause of action means an employer could not require an employee to violate a constitutional or

statutory provision. *Id.* at 573. Bushko was not required as a condition of continuing employment to violate any statutory or constitutional provision.

Bushko, however, believes that *Wandry v. Bull's Eye Credit*, 129 Wis. 2d 37, 384 N.W.2d 325 (1986) is not a case in which the employer required "an employee to do something that is forbidden by the law," thereby changing the rule of *Brockmeyer*.[3] Here, Bushko is in error. Although *Wandry* extended the rule of *Brockmeyer* to include the spirit, as well as the clear language of a statutory provision, *Wandry* still required that for a wrongful discharge the employee be required to act contrary to law, a statutory or constitutional provision. *Id.* at 46–47. The statute considered in *Wandry* was sec. 103.455, Stats.[4] The court stated: "We conclude

---

[3] Statement of Bushko's attorney at oral argument before this court.

[4] Sec. 103.455, Stats., provides as follows:

"103.455 *Deductions for faulty workmanship, loss, theft or damage.* No employer shall make any deduction from the wages due or earned by any employe, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction or unless the employer and a representative designated by the employe shall determine that such defective or faulty work, loss or theft, or damage is due to worker's negligence, carelessness, or wilful and intentional conduct on the part of such employe, or unless the employe is found guilty or held liable in a court of competent jurisdiction by reason thereof. If any such deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by said employe. Any agreement entered into between employer and employe contrary to this section shall be void and of no force and effect. In case of a disagreement between the two parties, the department shall be the third determining party subject to any appeal to the court."

that sec. 103.455 articulates a fundamental and well-defined public policy proscribing economic coercion by an employer upon an employee to bear the burden of a work-related loss . . . ." *Id.* at 47.

In analyzing the *Wandry* complaint, the court stated: "We read the complaint as alleging that the discharge resulted from the plaintiff-employee's *refusal* to pay for a work-related loss . . . ." *Id.* at 48. (emphasis added). The court also stated: "By discharging the employee for *refusing* to reimburse it for the loss, Bull's Eye violated the fundamental and well-defined public policy evidenced in sec. 103.455." *Id.* (Emphasis added.)

It is clear that *Wandry* required the employee be compelled to do something contrary to the spirit of sec. 103.455, Stats. The only extension of the *Brockmeyer* rule is that the spirit of a statue rather than only its literal reading is included in the rule of wrongful discharge.

We stated in *Brockmeyer*, 113 Wis. 2d at 573–74 that:

> "Courts should proceed cautiously when making public policy determinations. No employer should be subject to suit merely because a discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it."

Conceding that Bushko's conduct was praiseworthy or that the public may derive some benefit from it, we have not recognized, in fact we have refused in *Brockmeyer*, to recognize discharge for such conduct to be a cause of action for wrongful discharge.

In *Brockmeyer*, in discussing whether the narrowly recognized cause of action was a contract or tort action, we emphasized and stressed:

144

"[W]e conclude that a contract action is most appropriate for wrongful discharges. The contract action is essentially predicated on the breach of an implied provision that an employer will not discharge an employee *for refusing to perform an act that violates a clear mandate of public policy.* Tort actions cannot be maintained." *Id.* at 575–76. (Emphasis added.)

*Brockmeyer* expressly limits the public policy exception to only those situations in which an employee is discharged for refusing to act in violation of an established and well-defined public policy evidenced by existing law. We specifically rejected the broader "acting consistent with" public policy standard advocated by Bushko.

The court of appeals decision would have expanded *Brockmeyer's* narrow application to the broader spectrum of "bad faith" into employment contracts. In *Brockmeyer* we stated:

"We refuse to impose a duty to terminate in good faith into employment contracts. To do so would 'subject each discharge to judicial incursions into the amorphous concept of bad faith.' ... Moreover, we feel it unnecessary and unwarranted for the courts to become arbiters of any termination that may have a tinge of bad faith attached. Imposing a good faith duty to terminate would unduly restrict an employer's discretion in managing the work force." *Id.* at 569.

██

The court of appeals held that "freedom of speech" is a public policy that may support a wrongful discharge action. We refuse to extend the *Brockmeyer* cause of action for a wrongful discharge to include an employee's complaint that he was discharged as a result of oral or

145

written complaints made concerning some matter that is related to a public policy. The facts of *Brockmeyer* established that actions consistent with a public policy do not support a wrongful discharge claim under Wisconsin law. Brockmeyer alleged he was discharged because he informed his employer that he would tell the truth if asked to testify at a discrimination proceeding. We stated that such an allegation was distinct from an allegation that Brockmeyer was fired for refusing to violate a public policy. Although we recognize a wrongful discharge claim when an employer's actions violate a clearly mandated public policy, the public policy exception may not be used to extend constitutional free speech protection to private employment.

If we did not hold to the narrow public policy wrongful discharge claim of *Brockmeyer*, the next complaint would be based on the employer's failure to exercise due process in the discharge or failure to grant equal rights to the employee in the discharge. That Pandora's box would have no limit to claims not susceptible to a motion for summary judgment and would eliminate any distinction between private and governmental employment.

The public policy exception of *Brockmeyer* must be reflected clearly in existing law established by the people in the constitution or by the legislature in statutes. It is only these two areas of public policy that can be a basis for the exception, as we stated in *Brockmeyer*:

"The provisions of the Wisconsin Constitution initially declared the public policies of this state. Each time the constitution is amended, that also is an expression of public policy. In addition, public policy is regularly adopted and promulgated in the form of legislation. These declarations of public policy are

146

inherently incorporated into every employment at will relationship." 113 Wis. 2d at 573.

Also, we stated:

"The public policy must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute. Employers will be held liable for those terminations that effectuate an unlawful end." *Id.*

That is the scope of public policy as accepted for a wrongful discharge cause of action in *Brockmeyer.* This rule was not changed in *Wandry.*

Bushko's allegation that he was discharged for his complaints regarding various practices at Miller is a far cry from an allegation that Bushko was discharged because Miller directed him to act in violation of constitutional or statutory provisions relating to employment safety, hazardous wastes or honesty. Bushko has failed to allege or evidence any attempt directly or indirectly by Miller to require him as a condition of employment to act in an unlawful manner and therefore he has failed to evidence that his discharge was unlawful.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* While I agree with the majority that the plaintiff's claim cannot survive a summary judgment motion, I write separately to emphasize that it is the evidence, not the complaint, that is insufficient.

The complaint alleges that the employer violated a fundamental and well-defined public policy articulated in sec. 101.17, Stats., by discharging the plaintiff because he told the employer that a machine was in an unsafe condition that violated a state safety law. I con-

147

clude that the complaint states a cause of action for wrongful discharge under the standards set forth by this court in *Brockmeyer* and *Wandry*.[1] The plaintiff's affidavits and depositions are, however, in my opinion, insufficient to withstand the summary judgment motion.

By discussing the complaint and the evidence together, the majority dilutes the strength of the plaintiff's allegations with the weakness of the evidence. I shall treat the nature of the cause of action, the complaint and the evidence separately.

*The Nature of the Cause of Action.* In *Brockmeyer*, the court held that an at-will employee has a cause of action for wrongful discharge when the discharge "is contrary to a fundamental and well-defined public policy" articulated in a statutory or constitutional provision. The *Brockmeyer* court ruled that "employers will be held liable for those terminations that effectuate an unlawful end." *Brockmeyer*, 113 Wis. 2d at 573. In *Wandry*, this court recognized that the public policy of a statute is not limited to the literal language of the statute or the circumstances described in the statute. *Wandry*, 129 Wis. 2d at 42, 47.

The public policy rule adopted in *Brockmeyer* balances the interests of the employer, employee and the public. The rule is intended to protect employees against discharges that contravene fundamental public policies established by statutory and constitutional provisions without interfering unduly with an employer's legitimate discretion to discharge at-will employees.

---

[1] *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 335 N.W.2d 834 (1983); *Wandry v. Bulls Eye Credit*, 129 Wis. 2d 37, 384 N.W.2d 325 (1986).

This court has stated several guidelines for determining whether an employee has a claim for wrongful discharge under the *Brockmeyer* rule.[2] One guideline is that a discharge is actionable when an employee is discharged for refusing to violate a statute or constitutional provision (the "refusal guideline"). A second guideline is that a discharge is actionable when the employee is discharged for actions consistent with a clear and compelling public policy embodied in a statute or constitution. Each of the guidelines is a different but equally valid characterization of the kind of discharge that is actionable. Each is a manifestation of the kind of discharge that "is contrary to a fundamental and well-defined public policy" and therefore the basis for a wrongful discharge action under *Brockmeyer*.

The majority's exclusive reliance on the refusal guideline is not warranted by either the reasoning or the results of *Brockmeyer* and *Wandry*. Without referring to any particular passage or page in *Brockmeyer*, the majority asserts that *Brockmeyer* "specifically rejected" the idea that a discharge is actionable when based on

---

[2] "1. An employer is liable for discharge if it discharges an employee for refusing to violate a constitutional or statutory provision. Employers will be held liable for those terminations that effectuate an unlawful end.

"2. The discharge must clearly contravene the public welfare and gravely violate paramount requirements of public interest.

"3. An employer is liable for wrongful discharge if the employer discharges an employee for conduct that is consistent with a clear and compelling public policy.

"4. An employer is not liable for wrongful discharge merely because the employee's conduct precipitating the discharge was praiseworthy or the public derived some benefit from it."

*Wandry*, 129 Wis. 2d at 43 (citations to *Brockmeyer* omitted).

conduct consistent with clear and compelling public policy articulated in a statutory or constitutional provision. At 9. The court in *Brockmeyer* accepted that very idea. 113 Wis. 2d at 574.

The majority's reliance on the refusal guideline ultimately founders on the facts and language in *Wandry* where we upheld the plaintiff's cause of action for wrongful discharge. The fundamental public policy allegedly violated by the discharge in *Wandry* "aimed at *preventing employers* from using coercive economic power to shift the burden of a work-related loss from the employer to the employee, without giving the employee an opportunity to establish that the loss was not caused by the employee's carelessness, negligence or wilful misconduct." *Wandry*, 129 Wis. 2d at 46–47 (emphasis added). This fundamental public policy restrained the employer's conduct, not the employee's conduct. It is the employer's conduct of requesting reimbursement, not the employee's conduct of reimbursing the employer, that violates the statute. The conduct of the employee in *Wandry* who refused to reimburse the employer cannot coherently be construed as a refusal "to violate a constitutional or statutory provision." At 6. The court in *Wandry* did not decide the case under the refusal guideline. *Wandry*, 129 Wis. 2d at 48. By resisting her employer's use of economic coercion, the employee in *Wandry* acted consistently with rights or protections afforded her by the statute; the employee acted consistently with public policy, and her discharge undermined a clear and compelling public policy prohibiting such coercion.

The majority appears to stress that the triggering factor in a wrongful discharge case is the employer's "command" to the employee to act. Let us suppose in

*Wandry* that there had been no direct command to the employee to reimburse the employer but that the employer's policy or expectation or intent was that an employee would make reimbursement or be discharged. Let us further suppose that the employee of this hypothetical employer does not reimburse the employer and is fired. This hypothetical case should be controlled by *Wandry*. Whether the "command" is expressed or implied from the fact that the employer will fire an employee for failing to make reimbursement should not be the distinguishing factor.

The majority strains to cast *Wandry* into the refusal guideline. Indeed, with similar straining this case may be molded as one of refusal. See margin at note 6.

Regardless of how a fact situation is characterized—as one in which an employee's conduct was consistent with public policy, or an employee's conduct was consistent with public policy, or an employee refused to act in violaton of a statutory or constitutional provision, or an employee refused to obey an employer's command to violate a statutory or constitutional provision, or the employer's discharge violated public policy—the unifying principle of the *Brockmeyer* doctrine is that an employer may not use the power to discharge to undermine a fundamental and well-defined public policy embodied in the literal language or in the spirit of a statute or constitutional provision. Not only employees but also the public would suffer if the discharge power enhanced the ability of employers to violate public policy.

*The Complaint.* Under *Brockmeyer*, motions for dismissal or for summary judgment play a special role in the wrongful discharge action. This court directed the circuit courts to "screen cases on motions to dismiss for

failure to state a claim or for summary judgment *if the discharged employee cannot allege a clear expression of public policy." Brockmeyer*, 113 Wis. 2d at 574 (emphasis added). Ruling on these motions is the means by which the circuit court protects employers from unjustified interference with their discretion to terminate at-will employees.

To survive a motion to dismiss, a complaint for wrongful discharge must (1) identify a fundamental and well-defined public policy,[3] and (2) allege facts that, liberally construed, show that the discharge contravenes that fundamental and well-defined public policy.

In his complaint, the plaintiff cites sec. 101.17, Stats. 1983–84, as one of several statutory sections he claims was violated by the discharge. Section 101.17 prohibits the installation or use of a machine, mechanical device or steam boiler that does not fully comply

---

[3] This complaint attempts to satisfy this requirement by string-citing 3 state constitutional provisions and 20 statutes, but does not specify which public policy is implicated in the action. One statute cited has 12 subsections and covers 6 double-column pages in the statute book. The subject matter of the statutes extends from misbranding food, to solid and hazardous waste facilities and management, to fraudulent writings, to protection of witnesses of crime. A statute may articulate several public policies.

This court placed the burden on the complainant to "allege a clear expression of [a fundamental and well-defined] public policy" to enable the circuit court to screen out at an early stage of the judicial proceedings those cases which do not satisfy the requisites of a wrongful discharge action. *Brockmeyer*, 113 Wis. 2d at 574. A complaint should express clearly the public policy at issue to withstand a motion to dismiss.

The circuit court should construe the complaint strictly to determine whether the plaintiff has satisfied the burden of clearly expressing the public policy and the constitutional or statutory provisions.

with safety requirements established by state law or the published orders of the Department of Industry, Labor and Human Relations. Any person violating this statute is subject to a forfeiture.[4]

Section 101.17 is designed to protect employees and "frequenters" from danger to life, health and safety by discouraging employers from using or installing unsafe machines and encouraging them to use and install safe machines. Section 101.17 embodies a fundamental and well-defined public policy that an employer who installs or uses machines must keep informed about the applicable state laws and administrative orders as well as the condition of the machines. Intrinsic in this employee safety statute and in the employer's duty to keep informed is an employee's right to report safety violations to the employer. The public policy embodied in sec. 101.17 proscribes employer conduct that dams the flow of essential safety information to the employer who uses and installs the machines from the employees, the persons protected under the statutes and familiar with the machines.

The complaint alleges that the plaintiff was discharged because he "complained to his superiors respecting the defendant's failure to adequately guard machinery which machinery was dangerous to the safety of employees who were required to remove cans from it,

---

[4] Sec. 101.17, Stats. 1983–84, provides as follows:

"Machines and boilers, safety requirement. No machine, mechanical device, or steam boiler shall be installed or used in this state which does not fully comply with the requirements of the laws of this state enacted for the safety of employes and frequenters in places of employment and public buildings and with the orders of the department adopted and published in conformity with ss. 101.01 to 101.25. Any person violating this section shall be subject to the forfeitures provided in s. 101.02(12) and (13)."

on insecure ladders, while the machinery was moving.[5] In support of this allegation the plaintiff cites sec. 101.17 and an administrative rule requiring cutting machines to be properly guarded. Wis. Admin. Code, Ind. Sec. 1.41. Construing the factual allegations liberally, sec. 802.06(2)(f), Stats. 1983–84, the complaint alleges that an unsafe condition of the machine existed, that it violated a rule which implements sec. 101.17, and that the plaintiff was discharged for reporting the unsafe condition. I would hold that the complaint states a claim for wrongful discharge upon which relief may be granted. The plaintiff's reporting a safety violation is consistent with a clear and compelling public policy embodied in the statute. The employer is liable for wrongful discharge when it discharges an employee for conduct that is consistent with a clear and compelling

---

[5] My discussion focuses on this allegation. The complaint also alleges that the plaintiff's reports about falsification of time cards and expense reports, mishandling of hazardous waste, and a defective ladder led to his discharge.

With regard to the time cards, the plaintiff does not establish the impropriety, much less the illegality, of the practices he labels "falsification of time cards." His allegations concerning expense reports are equally unsupported.

With regard to hazardous waste, the plaintiff admits that the employer actually encouraged him to continue to monitor the handling of hazardous waste in the plant and gave him some responsibility for making sure that the wastes were handled properly. The plaintiff offers evidence that only indefinitely and generally describes the handling practices he was concerned about. He points to no specific incident and offers no evidence to show that the practices he complained about violated any statute or administrative rule.

With regard to the insecure ladder, the plaintiff cites an administrative rule detailing certain requirements for ladders but produces no evidence that any of these requirements were violated.

public policy.[6] A discharge for reporting a safety violation which contravenes a statute clearly contravenes the public welfare and gravely violates paramount requirements of public interest. *Brockmeyer*, 113 Wis. 2d at 573, 574, 577, 579.

*The Depositions and Affidavits.* Once the complaint is found sufficient, the question becomes whether the affidavits and other supporting papers create a genuine issue of material fact. To determine whether a genuine issue of material fact exists, a court first considers whether the moving party has made out a prima facie case. If the moving party establishes a prima facie case, a court examines the papers of the opposing party to see if they create a genuine issue of material fact. *Bank of Two Rivers v. Zimmer*, 112 Wis. 2d 624, 632, 334 N.W.2d 230 (1983). Where the defendant is the moving party, a prima facie case consists of a defense that would defeat the plaintiff's cause of action. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 566, 278 N.W.2d 857 (1979).

---

[6] In *Wandry* and in this case the fundamental and well-defined public policy regulates the behavior of the employer rather than the employee. In both cases the statutes protect the employee. Using the interpretation of the "refusal guideline" adopted by the majority to account for *Wandry*, the allegations in the complaint in this case—which for purposes of a motion to dismiss are accepted as true—can be read to say that the plaintiff refused to remain silent about safety violations, refused to cooperate with the employer in using an unsafe machine, and refused to close the lines of communication regarding statutory safety violations, thereby refusing to violate a fundamental and well-defined public policy articulated in sec. 101.17. The employer's "command" in this case to the employee not to report statutory safety violations is implied from the employer's imposition of sanctions on the employee's conduct, namely, discharging the employee for reporting a statutory safety violation.

The defendant in this case produced evidence that the plaintiff was discharged for just cause, a defense that would defeat a claim for wrongful discharge. The defendant showed that the plaintiff left work early and falsified his time card. The discharge immediately followed this breach of company rules. The plaintiff was told the reason for the discharge at the time he was discharged and admits to the conduct in question.

Once a moving party has established a prima facie case for summary judgment, the opposing party "may not rest upon the mere allegations or denials of the pleadings, but must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial." *Board of Regents v. Mussalem*, 94 Wis. 2d 657, 673, 289 N.W.2d 801 (1980).

The plaintiff claims that he was fired because he reported the violation of sec. 101.17, not because he left his job early. The evidence is that the plaintiff made a single report about the lack of a guard on the necker-flanger machine, a condition that may violate an administrative rule requiring guards on cutting machines. The plaintiff offers little if any evidence of the nature of the safety problem, or the nature of the violation of the law or rule, or of his report being the basis for the discharge. The plaintiff offers no evidence of what sort of guard was supposedly missing or that the necker-flanger is a cutting machine. The plaintiff himself dismisses the significance of his report concerning the safety of the necker-flanger machine by characterizing any problem with the machine as "minor." The record contains no showing that the plaintiff renewed or pressed his objection to this machine, no hint of a history of suppression of this employee's or any employee's reports of safety violations, and no showing that the plaintiff's discharge

156

immediately followed the safety report. Nothing in this record implies that the discharge was predicated on the plaintiff's report of this safety violation.

The defendant has produced evidence of a just-cause dismissal. The plaintiff's evidence is not sufficient to create a genuine issue of material fact warranting a trial. In this case one tenuous complaint standing alone is not a basis for inferring that the discharge was predicated on employee conduct that was consistent with a clear and compelling public policy. The undisputed facts and the reasonable inferences drawn from the facts do not provide a factual basis for the plaintiff's claim.

Accordingly, I would affirm the judgment of the circuit court granting summary judgment and would reverse the decision of the court of appeals.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join in this concurrence.