Stanley VANNERSON, Appellee,

v.

The BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, a body corporate; William Banowsky, President; Lewis Findley, Coordinator of Housing; and Morris B. Kinder, Director of The Physical Plant, Appellants.

No. 66416.

Supreme Court of Oklahoma.

Sept. 26, 1989.

Rehearing Denied Jan. 9, 1990.

Glen Rawdon, Norman and Randal D. Morley, Tulsa, for plaintiff/appellee.

Stanley M. Ward, Kurt F. Ockershauser, Susan Gail Seamans, and Lawrence E. Naifeh, Norman, and Robert D. Looney, Sr., Oklahoma City, for defendants/appellants.

SUMMERS, Justice.

The defendants appeal from a jury verdict in favor of plaintiff/employee on theories of breach of contract and wrongful termination in violation of public policy. The Court of Appeals reversed the judgment of the trial court based upon this court's decision in *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987), concluding that *Hinson* did not recognize a public policy exception to the employee-at-will doctrine.

We previously granted certiorari to examine the case in light of our more recent decision in *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989), which recognizes a cause of action in tort for wrongful discharge "in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." *Burk*, at 28. Because much of the evidence submitted to the jury and relied upon by Plaintiff for recovery was based on an occurrence not involving any breach of public policy we reverse the judgment and remand for further proceedings.

Plaintiff worked for the University of Oklahoma as a receiving and warehouse clerk, and as part of his responsibilities performed certain tasks related to inventory of appliances and furniture. In the course of his employment he reported discrepancies in inventory to his supervisor, who checked on the report and directed another employee to report back to Vannerson. Vannerson was dissatisfied with this action, became belligerent, and argued with his supervisor regarding the inventories in front of other employees, using highly abusive language. Although told to remain on the job, Vannerson immediately thereafter left and went to Internal Auditing to report the inventory discrepancies to that office. Later that day when asked by his superiors why he had disobeyed the order, he refused to answer, saying "I just can't say anything about it off the record. I don't have a court reporter or tape recorder with me".

The following day, Vannerson was terminated, according to his supervisor, for abusive and belligerent language, disobedience of a direct order, and refusal to answer any questions regarding his behavior. He followed the proper internal grievance procedure, and the University upheld his termination. He then filed suit alleging breach of contract and wrongful termination. Vannerson did not allege that any of the property had been stolen, but testified that "most likely" the installers "weren't pencil pushers", and that the problem was a record keeping error.

Vannerson also pleaded and offered proof in support of another incident occuring several months earlier. This consisted of his having seen the transfer of two boxes of unopened floor tiles from a University employee to a non-employee truck driver. Vannerson reported the incident to a supervisor and was dissatisfied with the University's response that the boxes were just "trash". He then prepared a letter to his state representative, which he did not send but showed to his supervisor, advising them he didn't accept their resolution of the matter. Ultimately the physical plant director turned the matter over to the police, resulting in a police determination that the transferring employee had illegally received $30.00 for the two boxes. As a result the transferring employee resigned his job. Plaintiff claimed his actions in this matter were also a basis for his wrongful discharge.

At trial the court instructed the jury that it must return a verdict in plaintiff's favor if he proved that the conduct for which he was terminated was protected by the public policy of the State of Oklahoma encouraging "whistle-blowing", and that he would not have been terminated but for engaging in such protected conduct. Although the defendants demurred to the evidence all of the above mentioned evidence was submitted to the jury, which returned a plaintiff's verdict of $524.00.

The trial court, of course, did not have the benefit of *Burk*, supra, which limits the cause of action for wrongful dismissal to dismissals which violate public policy. We discussed employee public policy claims in *Hinson v. Cameron*, 742 P.2d 549 (Okl. 1987). Therein we stated:

"An at-will employee's discharge has been declared to be actionable on several

*public policy* grounds. Claims recognized under this rubric are those by employees dismissed for (a) refusing to participate in an illegal activity; (b) performing an important public obligation; (c) exercising a legal right or interest; (d) exposing some wrongdoing by the employer; and (e) performing an act that public policy would encourage or, for refusing to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation." *Id.* 742 P.2d at 552–553. (Footnotes ommitted).

■ Although the court instructed the jury on public policy, no effort was made to require separate findings on the two incidents alleged to have resulted in Plaintiff's termination. We find that with regard to the inventory discrepancies, which we shall refer to as "incident number two", the plaintiff failed to tie his allegation of wrongful termination to any specific constitutional, statutory or decisional wrong by the University which he sought to correct by his actions.

We find this situation analogous to the one facing the Wisconsin Supreme Court when it upheld the trial court's grant of summary judgment to an employer who discharged an employee for complaining about the employer's policies regarding plant safety, hazardous wastes and honesty. *Bushko v. Miller Brewing Co.,* 134 Wis.2d 136, 396 N.W.2d 167 (1986). There the court found that the employee's

"allegation that [he] was discharged for his complaints regarding various practices [of the employer] is a far cry from an allegation that [he] was discharged because [his employer] directed him to act in violation of constitutional or statutory provisions relating to employment safety, hazardous wastes or honesty." *Bushko* at 172

The *Bushko* court concluded that because the plaintiff failed to present evidence that his employer directly or indirectly required him to act in an unlawful manner, his claim must fail. *Id.*

Similarly, with regard to incident number two the plaintiff failed to allege or prove

that unsafe, immoral or unlawful activity had occurred and that he was required as a condition of his employment to engage in or cover up such disfavored activity. See, *Hinson v. Cameron,* 742 P.2d at 553 n. 11. The record reflects that the plaintiff never alleged that any of the dishwashers or televisions were or had been stolen. He testified only that the incidents had been improperly investigated by his immediate supervisor, that he did not suspect wrongdoing, that he had no reason to believe anything had been stolen and that the most likely explanation was the occurrence of clerical errors on the part of the appliance installers. Tr. pp. 26, 45–47. The only policy violation in evidence is the University's internal policy that "custodial department records" be accurate. The University's internal policy that custodial department records be accurate fails to rise to the level of a constitutional, statutory or decisional statement of public policy of the State of Oklahoma. We find no competent evidence of any public policy violation which would give plaintiff the benefit of the *Burk* decision with regard to incident number two, and the trial court erred in allowing that portion of the testimony to be considered by the jury.

■ We find otherwise with regard to the floor tiles episode, which we shall refer to as "incident number one". There was evidence that plaintiff witnessed an unlawful transfer of state property, either by way of unauthorized sale (as per the police report) or unauthorized gift (as per an employee's version). If he was in fact discharged for going over his supervisor's head in complaint of an illegal disposition of state property then public policy is invoked and the jury's verdict has support in the law under *Burk.*

■ Our problem with the verdict is that evidence of both incidents were submitted to the jury as a basis for recovery, one of which would support a recovery and one of which would not. Although ordinarily a jury verdict will be sustained if supported by any competent evidence, *Walker v. St. Louis San Francisco Ry.,* 646 P.2d 593 (Okl.1982), such is not the

case if it is impossible on appellate review to separate plaintiff's possible recovery on properly submitted facts from his possible recovery on facts which should have not been submitted as a basis for recovery at all. *Guinn v. Church of Christ of Collinsville*, 775 P.2d 766 (Okl.1989). The fact that the trial and appeal of the case principally centered around the events of incident number two doesn't let us ignore that incident number one is in the record, and was properly available for the jury's consideration. As in *Guinn*, supra, this cause must be remanded for retrial, at which time plaintiff's claim shall be limited to recovery only if he properly meets his burden of proof as to discharge for reason of events related to the alleged incident number one.

The opinion of the Court of Appeals is vacated, the judgment of the trial court is reversed and the case remanded with directions as to retrial.

OPALA, V.C.J., and HODGES, LAVENDER, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concur by reason of stare decisis.

HARGRAVE, C.J., and SIMMS, J., concur in part; dissent in part.

SIMMS, Justice, concurring in part, dissenting in part:

I concur with that portion of the decision which reverses the trial court's judgment in favor of plaintiff. I dissent from that portion which remands the matter to the trial court to receive a new trial as to the tile incident. I would reverse the trial court and remand with directions to enter judgment in favor of defendants.

I am authorized to state that Chief Justice HARGRAVE joins me in the views expressed herein.