2011 OK CIV APP 49

Tracy MOORE, Plaintiff/Appellant,

v.

OKLAHOMA STATE UNIVERSITY d/b/a
Oklahoma Cooperative Extension
Service, Defendant/Appellee.

No. 107928.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Dec. 22, 2010.

Rehearing Denied Jan. 20, 2011.

Certiorari Denied March 21, 2011.

Ronald E. Baze, Eddy Law Firm, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma, for Defendant/Appellee.

DEBORAH B. BARNES, Judge.

¶ 1 Appellant Tracy Moore (Moore) filed a lawsuit on September 23, 2008, against her former employer, appellee Oklahoma State University d/b/a Oklahoma Cooperative Extension Service (OCES), claiming she was constructively discharged because of a hostile, retaliatory work environment after reporting "several instances of what she believed was fraudulent activity, including improper reporting of travel expense reimbursement, employee leave, and embezzlement of moneys entrusted with the Lawton extension office."[1] In particular, Moore states that in March of 2007, she "became aware of the account which had been opened with funds collected on behalf of a local 4–H Association and placed in the care of [OCES]."[2] Moore alleges that the "circumstances of the creation of this account spurred significant suspicion within [Moore] that the funds were being illegally managed.... Unable to tolerate the perceived improprieties within the workplace, [Moore] reported the existence of the bank account to Oklahoma State University's Ethics Point website in May of 2007."[3] An internal investigation ensued, establishing the existence and use of an unauthorized bank account.

¶ 2 As a result of her alleged constructive discharge, Moore asserted a claim for "Wrongful Discharge in Violation of State Public Policy—Burk Tort."[4] OCES moved for summary judgment, which the trial court granted in its "Journal Entry of Judgment," filed on December 17, 2009.[5] From that judgment, Moore appeals.[6]

---

1. Record (R.), Tab 1, Petition, p. 2.

2. R., Tab 4, Moore's Response to OCES's motion for summary judgment, p. 2.

3. R., Tab 4, Moore's Response to OCES's motion for summary judgment, Exh. 3, Moore's deposition testimony, pp. 98–99; R., Tab 3, OCES's motion for summary judgment, Exh. 7; Moore's deposition testimony, pp. 102, 139, 186; Exh. 8.

4. R., Tab 1, Petition, pp. 3–4. *See Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24.

5. R., Tab 7. The trial court did not state a basis for its decision.

6. The case proceeds under an accelerated procedure pursuant to Okla.Sup.Ct.R. 1.36, 12 O.S. Supp.2004, ch. 15, app. 1.

## UNCONTROVERTED MATERIAL FACTS

¶3 OCES is a "Division of Agricultural Sciences and Natural Resources Oklahoma State University."[7] OCES's office is entrusted to maintain monies from public groups and organizations on a regular basis through various activities, including charitable fundraisers.[8]

¶4 Moore began to work as a secretary for OCES in Lawton, Oklahoma, in November of 2006.[9] She resigned effective February 28, 2008.[10]

¶5 OCES has a written internal policy[11] that allows the extension office to open one checking account only. The policy provided that "County and District Extension Offices have authority to open and maintain one local checking account for the purpose of handling incidental fiscal affairs related to educational programming and clientele services.... The County Extension Director or the District Director will select a local bank to handle the Agency Funds in one bank account only...."

¶6 It is undisputed that contrary to this internal policy, on March 1, 2007, an account was opened at Liberty National Bank in Lawton by Sherry McDonald, an OCES employee, at the direction of Alan VanDeventer, then County Extension Director, in violation of the policy. Money from a fundraiser held for an evolving 4–H Leader organization was deposited into this bank account.[12]

¶7 Moore, believing the account to be fraudulent, had refused to assist in the management of that account.[13] In May 2007, she reported her concerns to Alan VanDeventer, Sherry McDonald, and to the Ethics Point website, maintained by OSU.[14]

¶8 Moore's report was investigated by Steve Smith, SW District Extension Director.[15] There is no dispute that the second bank account was unauthorized and established in violation of the written internal policy.

## STANDARD OF REVIEW

¶9 Summary judgment shall be granted when there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law. Rule 13(e), Rules for District Courts, 12 O.S. Supp.2002, ch. 2, app. The standard of review on the entry of judgment granting summary relief is *de novo*. *Jennings v. Badgett*, 2010 OK 7, ¶5, 230 P.3d 861, 864. We review rulings on issues of law pursuant to the plenary power of the appellate courts without deference to the trial court. *Id.*

¶10 Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions or other evidentiary materials show there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Tucker v. ADG, Inc.*, 2004 OK 71, ¶11, 102 P.3d 660, 665. "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. For purposes of summary judgment, "[a] fact is 'material' if proof of

7. R., Tab 3, Exh. 3, letter from District Extension Director to Moore, dated August 15, 2007.

8. R., Tab 4, Exh. 4, deposition of Marty Gene New, pp. 19–21.

9. R., Tab 3, Exh. 2, OSU's "Employment Action" form.

10. R., Tab 3, Exh. 5, letter from Moore to Marty New.

11. R., Tab 4, Exh. 2, "Policy and Procedure Guide Oklahoma Cooperative Extension Service," p. 8, "Agency Accounts," and p. 9, "Procedures."

12. R., Tab 3, Exh. 8, July 18, 2007, investigation report by Steve Smith, SW District Extension Director, resulting from Moore's internal report.

13. R., Tab 3, Exh. 7, deposition of Tracy Moore, p. 161; Tab 4, Exh. 3, deposition of Tracy Moore, p. 98.

14. R., Tab 4, p. 2; Exh. 4, deposition of Marty New, pp. 74–75; R., Tab 3, Exh. 8, pp. 1–2.

15. R., Tab 3, Exh. 8.

that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hadnot v. Shaw*, 1992 OK 21, ¶ 18, 826 P.2d 978, 985. (Footnote omitted.)

## ANALYSIS

¶ 11 Moore sued for damages for wrongful termination (constructive discharge) in violation of public policy—a *Burk* tort claim. As stated by the Oklahoma Supreme Court in *Kruchowski v. The Weyerhaeuser Co.*, 2008 OK 105, ¶ 24, 202 P.3d 144, 151–152:

> A viable *Burk* claim must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

*Id.* (quoting *Vasek v. Board of County Commissioners*, 2008 OK 35, ¶ 14, 186 P.3d 928, 932).

¶ 12 Moore raises several issues on appeal in her Petition in Error, which, in essence are that the trial court erred in determining (1) that she was not an at-will employee and (2) that she was terminated "as a consequence of a purely internal employment matter," rather than on the basis of a public policy violation "grounded within any constitutional, statutory, or judicial decision."[16] OCES presented these two arguments to the trial court in its motion for summary judgment—that Moore was not an at-will employee as required under *Burk* element one and that Moore failed to identify an Oklahoma public policy goal that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma as required in *Burk* elements three and four.[17]

### I. *At-Will Employment*

¶ 13 OCES denies that Moore was an at-will employee, as alleged in her Petition, and in support of that denial attached Exhibits 2, 3, and 4 [18] to its motion for summary judgment in an effort to establish that Moore was employed for a "definite duration," from year-to-year and thus, OCES argues, was not an at-will employee. Exhibit 2 is an Oklahoma State University "Employment Action" form for Moore, indicating a "Begin Date" of 11/30/06 and an "End Date" of 6/30/07, as well as her pay rate. Exhibit 4 is another Oklahoma State University "Employment Action" form with pay rate information on it and a "Begin Date" of 7/1/07 and an "End Date" of 6/30/08. Exhibit 3 is a letter dated August 15, 2007, from the District Extension Director to Moore, discussing the dependence of her position upon receipt of grant funds.

¶ 14 Although the grant funds for Moore's position, once authorized and received, have a period of definite duration, indicated on Exhibits 2 and 4, we disagree with OCES's assertion that Moore's *employment*, therefore, was for a definite duration. None of OCES's documents attached to its motion for summary judgment contains any limitation upon OCES's ability to terminate Moore at any time or any limitation upon Moore's ability to resign at any time. The record contains no contract of employment, executed by both parties, stating a certain length of employment or any other terms of the employment relationship.

¶ 15 The doctrine of employment at-will is firmly embedded in the common law of Oklahoma. *Clinton v. State of Oklahoma ex rel. Logan County Election Board*, 2001 OK 52, ¶ 5, 29 P.3d 543, 545. Under the at-will employment doctrine, employers are at liberty to fire an at-will employee without recourse, in good or bad faith, with or without cause, except where the termination is contrary to a clear mandate of public policy articulated by constitutional, statutory or decisional law. *Gilmore v. Enogex, Inc.*, 1994 OK 76, ¶ 6, 878 P.2d 360, 362–363. Moore's

---

16. Petition in Error, Exh. C.

17. R., Tab 3, pp. 2; 6–8.

18. R., Tab 3, Exhs. 2, 3, and 4.

position was funded with grant funds of a definite duration; however, we find her status, being employed for an indefinite duration, as a matter of law, was one of at-will employment. *See Singh v. Cities Service Oil Company,* 1976 OK 123, 554 P.2d 1367; *McCrady v. Oklahoma Department of Public Safety,* 2005 OK 67, ¶ 10, 122 P.3d 473, 475.

¶ 16 The questions regarding whether Moore was constructively discharged and, if so, the reason for the constructive discharge, remain as questions of fact for the trier of fact on remand.

### I. *Public Policy Goal*

¶ 17 There is a narrow exception to the at-will doctrine—the public policy exception. The exception is a limited restriction on employers' rights to discharge at-will employees. *Gilmore* at ¶ 6, 878 P.2d 360. Application of the public policy exception to the at-will employment doctrine demands violation of a clear mandate of public policy. Otherwise, no exception to the doctrine will lie. *Clinton* at ¶ 6, 29 P.3d 543. To succeed on a *Burk* claim, there must be an identifiable Oklahoma public policy goal "that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma." *Kruchowski* at ¶ 24, 202 P.3d at 151–152.

¶ 18 Moore argues that she was constructively discharged for the reason that she reported the second unauthorized account and that OCES's having a second account,

she contends, violates an Oklahoma public policy.[19] It is uncontroverted that VanDeventer directed the opening of the second bank account and that having more than one bank account violated the internal policy, so the question becomes whether violation of the internal banking policy in this case satisfies the fourth *Burk* element. "The implication of a sufficiently discernible public policy presents a question of law to be resolved either at nisi prius or ultimately by an appellate court." *Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶ 9, 176 P.3d 1204, 1210. (Footnote omitted.)

¶ 19 The internal fiscal policy has its roots in the Oklahoma Constitution and the Oklahoma statutes, which reflect the public interest in fiscal integrity. The Oklahoma Constitution created the Board of Regents as follows: "There is hereby created a Board of Regents for the Oklahoma Agricultural and Mechanical College and all Agricultural and Mechanical Schools and Colleges[20] maintained in whole or in part by the State...." Okla. Const., art. VI, § 31a.

¶ 20 Title 70 O.S. Supp.2005 § 3412, provides, in part:

The Board of Regents for the Oklahoma Agricultural and Mechanical Colleges shall have the supervision, management and control of Oklahoma State University ... and shall have the following additional powers and duties:

1. Adopt such rules and regulations as it deems necessary to govern each of the institutions under its jurisdiction....[21]

19. "So the only thing that you know it was a violation of was a policy for OSU; is that correct? [Answer] Yes, sir." (deposition of Tracy Moore at p. 102.) Moore had no evidence to support other allegations set forth in her Petition. When asked under oath if she had any evidence "that anything fraudulent occurred," she answered, "No, sir." (R., Tab 3, Exh. 7, deposition of Tracy Moore, pp. 165–166.) Moore alleged "improper reporting of travel expense reimbursement," in her Petition, but when asked under oath about it, she admitted she had observed nothing and "[w]as told" that one incident occurred. *Id.* at p. 170. When asked in her deposition if she had any "evidence whatsoever that anyone stole any money or embezzled any money in this account" she responded, "No, sir." *Id.* at p. 176. She also testified she had no knowledge that there was any "leave time slip tearing up."

*Id.* Finally, when Moore was asked under oath if she had any "evidence that there was any unlawful conduct dealing with the setting up of the account," she answered in the negative. *Id.* at pp. 188–189. However, Moore insisted the second account was, if not unlawful, still in violation of a policy. *Id.* at p. 161, lines 16–21.

20. Title 70 O.S.2001 § 3401 provides that the institution located in Stillwater, Oklahoma, shall be known as "Oklahoma State University," "recognized to be such public corporation and to have such powers, acting through its regents."

21. "There can be no question but that the Board of Regents has all power necessary to accomplish the objects it was constitutionally empowered to achieve and is therefore authorized to enact rules, regulations and bylaws for the good gov-

¶ 21 Title 70 O.S.2001 § 3906, provides that:

A. It is the intent of the Legislature that the Oklahoma State Regents for Higher Education establish uniform standard guidelines and criteria for all institutions of The Oklahoma State System of Higher Education for all special accounts, special agency accounts, or any other funds and for expenditures from such funds and accounts.

B. Interest income from investments of monies in special accounts and special agency accounts made through the Office of the State Treasurer shall accrue to the fund from which the investment was made.

¶ 22 Pursuant to that authority, Oklahoma State University promulgated its "Accounting Policy & Procedures for Oklahoma Cooperative Extension Service Extension Center's Agency Funds Revised November, 2006" (Policy).[22] The Policy states, in part, that "[t]hese procedures are established pursuant to the authority contained in Article VI, Section 31 and 31a of the Oklahoma Constitution[23] ... as well as the authority in Title 70, Oklahoma Statutes." [24]

¶ 23 The Policy specifically covers "[i]ncome and expenditure for all 4–H funds received or handled by Extension staff." [25] Policy procedure 6.01 provides that one bank account will be established.[26]

¶ 24 The Policy is also reflective of 62 O.S. Supp.2009 § 34.57 (emphasis added),[27] which provides, in part, as follows:

A. There is hereby created in the official depository in the State Treasury *an agency clearing account* for each state offi-

cer, department, board, commission, *institution or agency of the state,* hereinafter referred to collectively as state agencies. An agency special account established under Section 7.2 of this title may be used for the purposes of an agency clearing account.

B. It shall be the *duty* of each state agency, officer or employee, *to deposit in the agency clearing account,* or agency special account, established under Section 7.2 of this title, *all monies of every kind* . . . .

C. All such monies collected pursuant to this section shall be deposited as follows in the agency clearing account or agency special account established therefor:

1. Receipts of One Hundred Dollars ($100.00) or more shall be deposited on the same banking day as received; and

2. Receipts of less than One Hundred Dollars ($100.00) may be held until accumulated receipts equal One Hundred Dollars ($100.00) or for five (5) business days, whichever occurs first, and shall then be deposited no later than the next business day.

a. Each state agency that has custody of receipts of less than One Hundred Dollars ($100.00) shall provide adequate safekeeping of such receipts.

b. No disbursements shall be made from such receipts prior to this deposit.

c. All checks received must be restrictively endorsed immediately upon receipt.[28]

ernment and management of the university and its every department." *Randolph v. Board of Regents of Oklahoma Colleges,* 1982 OK 75, ¶ 6, 648 P.2d 825, 827. (Citations omitted.)

**22.** The web address (http://intranet.okstate.edu/Fiscal_Affairs/policy.htm) containing the policy and procedure document is identified in Tab 4, Moore's Response and Objection to OCES's motion for summary judgment, at Exh. 2., pp. 8–10.

**23.** Okla. Const., art. VI, § 31a.

**24.** Policy, p. 1.

**25.** *Id.*

**26.** *Id.* at p. 4.

**27.** Renumbered from 62 O.S. Supp.2008 § 7.1 by Laws 2009, HB 2015, c. 441, § 64, emerg. eff. July 1, 2009.

**28.** Another section of the Oklahoma State Finance Act (62 O.S. Supp.2009 § 34.56, renumbered from 62 O.S. Supp.2002 § 7.2 by Laws 2009, HB 2015, c. 441, § 64, emerg. eff. July 1, 2009), provides for "agency special accounts" which *must be approved* by a Special Agency Account Board and which further provides that "*no money shall be deposited in banks or other depositories unless the bank accounts are maintained by the State Treasurer or are for the deposit of authorized petty cash funds.*" (Emphasis added.) The Attorney General of Oklahoma (1978 OK AG 265) has also confirmed the policy: "[I]t

This account is subject to audits by the State Auditor and Inspector, pursuant to 74 O.S. Supp.2010 § 213, whose mission is "to independently serve the citizens of Oklahoma by promoting accountability and fiscal integrity in state and local government." [29]

¶ 25 In *Vannerson v. Board of Regents of the University of Oklahoma*, 1989 OK 125, 784 P.2d 1053, the Oklahoma Supreme Court considered the *Burk* claim of an employee who alleged he was terminated after he reported discrepancies in the university warehouse inventory records. Months earlier, the employee had also reported seeing a university employee transfer two boxes of state-owned floor tiles to a non-employee. The Supreme Court held, as to the inventory records report that a university policy in favor of keeping accurate inventory records did not rise to the level of an established and well-defined state public policy. However, with respect to the floor tiles, the Court held that "[i]f [plaintiff] was in fact discharged for going over his supervisor's head in complaint of an illegal disposition of state property then public policy is invoked...." *Vannerson* at ¶ 11, 784 P.2d at 1055.[30]

¶ 26 In *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, the Oklahoma Supreme Court, in distinguishing Hayes's alleged *Burk* claim, stated that Hayes's situation "involves only the private or proprietary interests of the employer-employee relationship, not the direct interests of the general public...." *Id.* at ¶ 24, 905 P.2d 778. The *Hayes* Court went on to state that:

> This situation [Hayes's] is also distinguishable from that dealt with in *Vannerson v. Board of Regents of University of Oklahoma*, 784 P.2d 1053 (Okla.1989),

where we held a public employee working for the University of Oklahoma, a State institution, had a viable claim under *Burk* if he could show he was terminated for going over his supervisor's head in complaint of an illegal disposition of state property.... In *Vannerson* the activity subject to the discharged employee's reporting involved the illegal transfer, by sale or gift, of **public** property, a situation which we believe concerns *a clear and compelling public policy*, **protecting the public's interest in seeing to it that the peoples' tax dollars are not fraudulently stolen by State employees or officials, or other individuals, by either giving away or selling public property for their own private reasons or profit.**

*Id.* at ¶ 26, 905 P.2d 778. (Bold in original with emphasis added.)

¶ 27 Only one OCES account is authorized. Moore reported that a second, unauthorized OCES account was created and used, contrary to the statutory scheme. Here, the clear public interest to support Moore's *Burk* claim is embodied in the statutes that mandate that the public's monies (in the instant case, 4–H funds) entrusted to OCES are accounted for in a manner prescribed by the Legislature and protected from illegal acts of State employees or officials. These statutes allow for one account only, in the absence of additional authorization.

### I. Lack of Statutory Remedy

▮ ¶ 28 The fifth *Burk* element Moore must meet is that there be "no statutory remedy ... that is adequate to protect the Oklahoma policy goal." If Moore has a stat-

---

is initially observed that the appropriate board of regents of the respective institution is charged with the responsibilities of receiving and making disposition of ... all monies ... received from any other source by the institutions under its jurisdiction.... [I]t is not proper for a state college to maintain an auxiliary bank account beyond the direct control and supervision of the appropriate board of regents."

29. *See* "Agency Mission" statement at *http://www.sai.state.ok.us/Pages/mission.html*.

30. *See also Crain v. National American Insurance Co.*, 2002 OK CIV APP 77, ¶ 21, 52 P.3d 1035,

1040. In *Crain*, the Court of Civil Appeals reversed the trial court's granting of a motion to dismiss a *Burk* tort claim where an employee of an insurance company, under the general supervisory control of the State Insurance Department, was required by statute to provide truthful information to outside auditors, reported financial irregularities and claimed he was terminated in retaliation for so doing. The Court of Civil Appeals noted the public policy interest—that the audit was part of a statutorily-prescribed process "ensuring that the public can safely rely on the ability of insurance companies to serve its interests...."

utory remedy, then her complaint premised upon a *Burk* tort must fail. We find, however, no statutory remedy for a violation of the statutes set forth above.

¶ 29 Further, Moore has no remedy under the "whistle-blower" [31] statute. Institutions subordinate to, and established by, the Board of Regents are within the Oklahoma Constitution's mandate of self-governing entities; therefore, statutes like the "whistleblower" statute are not applicable to Moore as an employee of OCES.

¶ 30 In *State of Oklahoma ex rel. Board of Regents of Oklahoma State University v. Oklahoma Merit Protection Commission,* 2001 OK 17, 19 P.3d 865, the Oklahoma Supreme Court issued a writ prohibiting the Oklahoma Merit Protection Commission from exercising jurisdiction over the university and its president, as constitutional entities, empowered by Oklahoma Constitution art. VI § 31a, art. XIII–A §§ 1–2, and art. XIII–B §§ 1 and 2:

> to conduct the internal affairs of their subordinate institutions of higher learning *free of any interference* by the Oklahoma Merit Protection Commission. The Legislature is powerless to delegate the petitioners' constitutional control over the management of their institutions to any department, commission or agency of state government.
>
> Any provisions found in 74 O.S.Supp. 2000 § 840–2.5 (popularly referred to as the *whistle blower act* ) which may appear to *contravene or abridge* the petitioners' fundamental-law power *clearly offend* the *exclusive authority* granted them by ... the Oklahoma Constitution. *The Commission is without jurisdiction over the grievance tendered by the instant controversy between a subordinate institution and one of its employees. It is hence prohibited from proceeding further in that pending matter.*

*Id.* at ¶¶ 1–2, 19 P.3d 865.

## CONCLUSION

¶ 31 Based on our review of the record and the applicable law, we reverse the trial court's grant of summary judgment in favor of OCES. Moore has alleged facts for which relief is legally possible because they lie within the protected workplace parameters established for a wrongful discharge in breach of public policy. We remand the case for trial on the issues of whether Moore, whom we find as a matter of law to be an at-will employee, was constructively discharged and, if so, whether that discharge was "in significant part for a reason that violates" the Oklahoma public policy goal, as set forth in this Opinion and as required by *Burk.*

¶ 32 **REVERSED AND REMANDED.**

WISEMAN, C.J., and FISCHER, P.J., concur.