2001 OK 52

Stacy Lynne CLINTON, an
individual, Plaintiff,

v.

STATE of Oklahoma, ex rel. LOGAN
COUNTY ELECTION BOARD; Sue
Ferrel, as Secretary of the Logan Coun-
ty Election Board; Logan County Com-
missioners, Defendants.

No. 95,926.

Supreme Court of Oklahoma.

June 26, 2001.

N. Kay Bridger–Riley, Diana R. Stallard, Christopher L. Camp, Tulsa; and A. Daniel Woska, John E. Barbush, Oklahoma City, for Plaintiff.

Chris J. Collins, Jason C. Wagner, Michael L. Carr, Oklahoma City, for Defendants.

Mark Hammons, Oklahoma City, for Amicus Curiae, Oklahoma Employment Lawyers Association.

BOUDREAU, Justice:

¶ 1 Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601 *et seq.*, the United States District Court for the Western District of Oklahoma, Vicki Miles–LaGrange, certified the following question:

> In light of *Collier v. Insignia Financial Group*, 1999 OK 49, 981 P.2d 321, is a gender status-based discrimination claim, such as one's status as a pregnant female, actionable under a *Burk* public policy tort theory?

I

## COURT'S FUNCTION WHEN RESPONDING TO A CERTIFIED QUESTION FROM A FEDERAL COURT

¶ 2 Since the case is not before us for decision we refrain from applying our answer to the certified question to the facts of the case. We also refrain from passing upon the effect of federal procedure on the issues, facts and proof in the case. We briefly outline the parties' contentions, provided to us by the certifying court, to place the certified question in perspective.

¶ 3 Logan County Election Board (Board) employed plaintiff, Clinton, from September of 1997 through August 18, 1998, when the Board fired her. Defendants contend they fired Clinton because of her dishonesty, her unsatisfactory work performance and her general work attitude. Clinton contends the Board fired her because she was pregnant. The certifying court advised us that Clinton sued defendants for pregnancy discrimination under Title VII, 42 U.S.C. § 2000e(k), and that Clinton has sought leave to amend her complaint to add a supplemental claim of "tortious violation of public policy against gender discrimination, as set forth in the Oklahoma Anti Discrimination Act," 25 O.S. §§ 1101 *et seq.* (OADA).

¶ 4 Inherent in the certifying court's question and statement of the case are the implications that plaintiff's employment is terminable-at-will, that firing an at-will employee because she is pregnant violates Oklahoma's public policy and that plaintiff has an adequate statutory remedy under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(k), 2000e 2(a)(1), for her alleged wrongful discharge. Accordingly, we rephrase the question as follows:

> When an employer discharges a terminable-at-will employee based on the employee's status and the reason for the discharge violates Oklahoma's clear and compelling public policy, but the employee has an adequate federal statutory remedy for the wrongful discharge, may that employee also bring a tort claim under *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d

24, for wrongful discharge in violation of Oklahoma's public policy?

We answer the question in the negative.

## II

## DISCUSSION

### A. *Public policy exception to at-will-employment doctrine*

¶ 5 The doctrine of employment-at-will is firmly embedded in the common law of Oklahoma. *Collier v. Insignia Financial Group*, 1999 OK 49, 981 P.2d 321, 323. Under this doctrine, an employee with an employment contract of indefinite duration is at liberty to leave his or her employment for any reason or no reason without incurring liability to the employer. *Singh v. Cities Service Oil Co.*, 1976 OK 123, 554 P.2d 1367, 1369. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer. *Id.* Thus, under the employment-at-will doctrine an employer is also at liberty to fire an at-will employee for any reason or no reason without incurring liability to the employee. *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24.

¶ 6 Twelve years ago, in *Burk*, we created a narrow exception to the employment-at-will doctrine-the public policy exception. The exception is a limited restriction on employers' rights to discharge at-will employees. The exception rests on the notion that in a civilized society the rights of employers to discharge at-will employees is necessarily balanced against the rights of the public at large as found in existing law. *Id.* at 29. We held that "an employee [who] is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy" may bring a tort claim for wrongful discharge. *Id.* The *Burk* tort lies only when an employer violates, by wrongful discharge of an at-will

employee, an Oklahoma public policy goal that is clearly articulated in existing Oklahoma law-constitutional, statutory or juris-prudential. *Collier*, 981 P.2d at 323. When we created this unique tort we cautioned that it applies to only a narrow class of cases and must be tightly circumscribed. *Burk*, 770 P.2d at 28–29. We have often repeated these warnings. *See, e.g., Collier*, 981 P.2d 321, 323; *Griffin v. Mullinix*, 1997 OK 120, 947 P.2d 177, 178; *Marshall v. OK Rental & Leasing, Inc.*, 1997 OK 34, 939 P.2d 1116, 1119; *List v. Anchor Paint Mfg. Co.*, 1996 OK 1, 910 P.2d 1011, 1013; *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, 785.

### B. *Use of public policy exception in conjunction with anti-discrimination statutes*

¶ 7 Within the context of at-will employment terminations, overlapping remedies often exist. A plaintiff may claim his or her termination violates one of the traditional statutory proscriptions of employment discrimination and also claim the termination falls within an exception to the employment-at-will doctrine. Considering this question in *List* and *Marshall*, cases in which plaintiffs had adequate federal statutory remedies under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and Title VII, respectively, we held the *Burk* tort was not available.[1] After *List* and *Marshall*, we decided *Collier*. In *Collier* we considered the first impression issue whether the *Burk* tort should be extended beyond plaintiffs who had actually been discharged to include plaintiffs who had been constructively discharged. We extended *Burk* to include constructive discharges and identified factors to be considered in determining whether a constructive discharge occurred. We concluded that an adequate state statutory remedy would preclude the *Burk* tort. We examined the OADA and concluded it does not provide an adequate remedy for victims of sex discrimi-

---

1. In *List* and *Marshall*, we also discussed cases from other jurisdictions that distinguish between status-based and conduct-based wrongful discharges. We noted that some jurisdictions and scholars have criticized using federal and/or state anti-discrimination statutes (*i.e.*, using a employee's status) as a basis for the so-called public

policy tort. *List*, 910 P.2d at 1014–15; *Marshall*, 939 P.2d at 1121–22. While both *List* and *Marshall* discussed the status versus conduct distinction, we view the holdings in those cases as being premised primarily on the fact that in each case plaintiff had an adequate statutory remedy for the alleged wrongful discharge.

nation. We were silent, however, as to whether the existence of an adequate federal statutory remedy precludes the *Burk* tort. That silence, together with our previous decisions in *List* and *Marshall,* may have resulted in some uncertainty about the nature of the *Burk* tort. Some argue, as the plaintiff has in this case, that after *Collier* the existence of an adequate federal statutory remedy is immaterial to the *Burk* tort. Others argue, as the defendants have in this case, that under *List* and *Marshall* the existence of an adequate federal statutory remedy precludes the *Burk* tort.

¶ 8 Today we answer the question head-on. The purpose of the public policy exception to the at-will-employment doctrine is to protect the state's public policy in the context of at-will employment. *See Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984) (the policy underlying the exception is that the common law should not be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy). The *Burk* tort protects Oklahoma's public policy by ensuring there is a strong disincentive to any Oklahoma employer who might wish to discharge an at-will employee where the reason for the discharge violates Oklahoma's clear and compelling public policy.

¶ 9 When a statutory remedy adequately accomplishes the goal of protecting Oklahoma public policy, a common law remedy is not needed. While a federal statute cannot by itself serve as a statement of Oklahoma policy, a federal statutory remedy may be as effective as an Oklahoma statutory remedy in dissuading employers from discharging employees for reasons that violate Oklahoma public policy. Accordingly, we hold the existence of a federal statutory remedy that is sufficient to protect Oklahoma public policy precludes the creation of an independent common law claim based on a public policy exception to the employment-at-will doctrine.

### III

### CONCLUSION

¶ 10 We clarify the parameters of the *Burk* tort. First, plaintiff must identify an Oklahoma public policy goal that is clear and compelling and is articulated in existing Oklahoma constitutional, statutory or jurisprudential law. While a federal statute, by itself, cannot serve as an articulation of Oklahoma public policy, *Griffin v. Mullinix,* 947 P.2d 177, 179, the existence of a federal statutory remedy or a state statutory remedy that is sufficient to protect the identified Oklahoma public policy goal precludes the *Burk* tort. The initial determination of public policy and the initial determination of the adequacy of the statutory remedy are questions of law to be resolved by the court. *Hayes v. Eateries, Inc.,* 905 P.2d 778, 785 (initial determination of public policy is a question of law). Second, plaintiff must establish he or she is an at-will employee and the reason for his or her discharge violates the identified Oklahoma public policy goal. A discharge for purposes of the *Burk* tort may be either actual or constructive. *Collier,* 981 P.2d 321.

¶ 11 We rephrase the certified question as follows:

> When an employer discharges a terminable-at-will employee based on the employee's status and the reason for the discharge violates Oklahoma's clear and compelling public policy, but the employee has an adequate federal statutory remedy for the wrongful discharge, may that employee also bring a tort claim under *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24, for wrongful discharge in violation of Oklahoma's public policy?

¶ 12 We answer the rephrased question in the negative.

HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS, WINCHESTER, JJ., concur.

OPALA, J., concurs in result but not in the text of the court's pronouncement.

KAUGER, J., concurring:

¶ 1 The majority recasts the certified question [1] adopting the position expressed in the

---

1. See, *Oglesby v. Liberty Mut. Ins. Co.,* 1992 OK

61, ¶ 1, 832 P.2d 834; *Centric Corp. v. Morrison–*

dissent in *Collier v. Insignia Commercial Group*, 1999 OK 49, ¶ 8, 981 P.2d 321. It is unnecessary to extend the teachings of *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24 to remedy a state law public policy claim for wrongful discharge if adequate federal statutory remedies are available to the employee for a wrongful discharge. I concur based on the reasoning set forth in my dissent in *Collier*.

OPALA, J., concurring in the result but not in the text of the court's pronouncement.

¶ 1 The United States District Court for the Western District of Oklahoma certified the following question to be answered by this court:

> In light of *Collier v. Insignia Financial Group*, is a gender status-based discrimination claim, such as one's status as a pregnant female, actionable under a *Burk* public policy tort theory? (Citation omitted.)

The court changed the tendered federal-court query by giving its answer to a differently-worded question whose text follows:

> When an employer discharges a terminable-at-will employee based on the employee's status and the reason for the discharge violates Oklahoma's clear and compelling public policy, but the employee has an adequate federal statutory remedy for the wrongful discharge, may that employee also bring a tort claim under *Burk v. K–Mart Corp.*, for wrongful discharge in violation of Oklahoma's public policy? (Citation omitted.)

¶ 2 By rephrasing the question, the court shifts its emphasis *from whether this employee's status-based claim is actionable under Burk* [1] *to whether the very existence of a federal statutory remedy makes her state claim unavailable. Following its extant jurisprudence, the court assumes that in Oklahoma a claim for gender-based discrimination is status-based—a description with which I am not comfortable.* I would not rephrase the question but answer the query as posed. Writing separately, I hope to unveil to the Bench and Bar my own analytical insights into the mysteries of the *Burk* tort and its jurisprudential progeny.

## *BURK'S* MODIFICATION OF THE COMMON LAW

¶ 3 In a pure at-will employment context the employer may fire a servant for good reason, bad reason, or no reason.[2] *Burk* made actionable only that employment termination which is deemed to be in breach of public policy. *That is Burk's critical and singular change in the common law.* All the other elements of the *Burk*-crafted wrongful discharge claim are to be drawn from statutory or constitutional sources. Public policy must be based on a clearly articulated mandate of the *written law*; it cannot be found solely in the common law.[3] The first step in a *Burk* analysis is to identify the offending employer's conduct in terms of its conformity to, or discord with, *Oklahoma's public policy.* Once public policy is found to have been breached, *we then look to state law* to determine if there is a remedy commensurate with that which governs like or similar on-the-job claims for employer-dealt harm. If statutory remedy is found to be co-extensive with that provided for other similar harms, we must recede from intervening in the face of a complete legislative solution. *It is only when the available remedy is not commensurate with that which is provided for like or similar harms to vindicate an on-the-job tort that we proceed to craft an appropriate remedy.*

¶ 4 Although I supported the common law's critical modification that gave *Burk* its birth, I receded from the there-crafted tort remedy. The *Burk* claim, in my view, should have been rested on the employer's quasi-contractual breach of implied-in-law duty not

---

Knudsen Co., 1986 OK 83, ¶ 0, 731 P.2d 411.

1. *Burk v. K–Mart Corp.*, 1989 OK 22, ¶ 17, 770 P.2d 24, 29–30.

2. *Singh v. Cities Service Oil Co.*, 1976 OK 123, ¶ 6, 554 P.2d 1367, 1369.

3. *See Burk* at ¶ 18, at 30; *Groce v. Foster*, 1994 OK 88, ¶¶ 8–9, 880 P.2d 902, 905.

to discharge a servant for reasons that offend public policy.[4]

¶5 I agree today that congressional legislation cannot *eo ipso*[5] fashion Oklahoma's public policy. Federal statutes are not always a policy directive binding upon the States. A *Burk* claim must be anchored in some statutory or constitutional expression of Oklahoma's own public policy.[6] Because the plaintiff has demonstrated here *no breach of articulated policy upon which the initial predicate of her Burk claim may be rested, I concur in the result but not in the text of the court's pronouncement.*

### *BURK* LIABILITY RESTS SOLELY ON PUBLIC POLICY

¶6 There appears to be a lack of symmetry in this court's extant *Burk* jurisprudence. In *Tate v. Browning–Ferris, Inc.*,[7] we found from sources of state statutory and federal constitutional law a command for equal on-the-job treatment of persons of African descent. The breach of public policy for which *Tate* allowed a *Burk* action was rested on a violation of: (1) the Oklahoma Anti–Discrimination Act (AODA)[8] and of (2) the extant U.S. Supreme Court's XIVth Amendment jurisprudence.[9] The latter legal source, part of this Nation's fundamental law since 1868, has served as a basis for articulated national public policy for all the States.

¶7 In *Brown v. Ford*,[10] a claim of sexual harassment created by a hostile work environment, for wrongful termination, and for sexual battery, we neither accepted nor rejected federal law as a basis for Oklahoma's public policy. Because Oklahoma's common law afforded Brown an ample remedy by an action for assault and battery, it was unnecessary to decide whether a *Burk* claim also would lie.

¶8 It was in *List v. Anchor Paint Mfg. Co.*,[11] and *Marshall v. OK Rental & Leasing, Inc.*,[12] that the court's analysis became less than clear. The question dealt with there was whether constructive-discharge claims based on age discrimination (in *List*) and on sexual harassment by hostile work environment (in *Marshall*) were also actionable as a *Burk* tort. The court rejected the plaintiff-pressed notion of liability by pronouncing that *both age discrimination and hostile work environment's* brand of sexual harassment were adequately covered by legislation.[13] The court's language in *List* and *Marshall* enmeshed the public-policy prong of the *Burk* analysis with the notion that the type of discrimination whose presence must be found—in an act or vis-á-vis one's status was determinative of whether a claim may be deemed actionable.[14] Today's opinion, whose

---

4.  *See Burk* at ¶¶3–6, at 30–31 (Opala, Vice Chief Justice, concurring in part and dissenting in part).

5.  *Eo ipso* is defined as "[b]y that very act." Black's Law Dictionary 555 (7th ed.1999).

6.  In *Beard v. Viene*, 1992 OK 28, ¶16, 826 P.2d 990, 998, an exception was made, in a *dissimilar context*, to the requirement that Oklahoma's public policy must stem from this state's own law. As a matter of interstate comity, Oklahoma recognized in *Beard* a foreign state's municipal tort liability limit, stating that "[w]here a state legislature, subject to constitutional constraints, promulgates legislation which delineates the permissible limits on waiver of the 'privilege of immunity,' that legislation unequivocally constitutes the public policy of the state." *Id.* at ¶13, 826 P.2d at 996.

7.  1992 OK 72, ¶10, 833 P.2d 1218, 1224.

8.  The provisions of 25 O.S.1991 §§ 1101 *et seq.* include in pertinent part:
    "A. The general purposes of this act are to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act of 1967, and Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act, and to provide rights and remedies substantially equivalent to those granted under the federal Fair Housing Law." * * *

9.  U.S. Const. amend. XIV, § 1. "[N]or shall any state ... *deny to any person within its jurisdiction the equal protection of the laws.*" (emphasis added).

10. 1995 OK 101, ¶14, 905 P.2d 223, 230.

11. 1996 OK 1, 910 P.2d 1011.

12. 1997 OK 34, 939 P.2d 1116.

13. *List* at ¶12, 910 P.2d at 1014, *Marshall* at ¶18, 939 P.2d at 1121.

14. *List* at ¶18, 910 P.2d at 1015, *Marshall* at ¶10, 939 P.2d at 1119.

text appears slightly to retreat from reliance on the conduct-versus-status dichotomy,[15] implicitly recognizes the fallacy of yesteryear's imprimatur.

¶ 9 *List* and *Marshall* are, in my view, best understood when rested on a different analysis. In *the former case (List)*, the state age discrimination statute,[16] which appeared to occupy the entire field, was deemed to have provided the plaintiff with an exclusive remedial vindication. In *the latter case (Marshall)*, the hostile work environment claim was sought to be drawn along lines paralleling the invoked federal Title VII jurisprudence,[17] which, like federal statutory law, does not *eo ipso* fit into the framework of public policy binding on Oklahoma. There was simply no mandated Oklahoma public policy on which Marshall's claim could be founded. Moreover, at least some of this court's members must surely have had apprehension of embracing much of what is now in the body of federal hostile-work-environment jurisprudence. The tilt of that decisional law appears destined to reach a collision course with permissible time-and-place restrictions on one's freedom of speech. Its trend is most clearly divinable when a federal claim is allowed to be grounded *solely* in on-

the-job utterances perceived to be offensive to the tastes of some work force component. To do *less than reject out-of-hand the* overbroad judicial construction of federal sex discrimination statutes would contravene the generous protection of free speech [18] afforded by this State's own fundamental law, Art. 2, § 22, Okl. Const.[19] The States are entirely free to protect the right of expression with greater solicitude and within a wider dimensional range of immunity than the shield available under the U.S. Constitution.[20]

¶ 10 Finally, in *Collier v. Insignia Financial Group*,[21] we applied, in the context of a *Burk* tort, a legislative command [22] that condemns certain offensive discriminatory practices. There we declared that the so-called *quid pro quo* conduct—the oldest and crudest form of employment-connected harm to economically dependent and disadvantaged victims—lies clearly within the core concept of state law's prohibition against gender-based on-the-job discrimination.

¶ 11 My own review of the court's recent *Burk*-tort case law reveals that the decisions may indeed be regarded as symmetrical when analyzed in light of the public policy's

---

15. "While both *List* and *Marshall* discussed the status versus conduct distinction, we view the holdings in those cases as being premised primarily on the fact that in each case plaintiff had an adequate statutory remedy for the alleged wrongful discharge." Footnote 1 of today's opinion.

16. *Supra* note 8.

17. See Title VII of the Civil Rights Act of 1964, 78 Stat.253, 42 U.S.C. § 2000e *et seq.* By "Title VII jurisprudence" I describe federal case law exposition of that part of the Civil Rights Act of 1964 which construes and applies the Act's prohibition of employment-related race, gender and sex discrimination.

 Hostile work environment occurs when one's sexual conduct has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). *See also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295.

18. Language should be considered in its setting and not be detached from the milieu in which it is uttered. "The salon of Madame Pompadour is

not to be likened to the rough-and-tumble atmosphere of the American oil refinery." *Eddy v. Brown*, 1986 OK 3, ¶ 7, 715 P.2d 74, 77. *See also Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶¶ 13–21, 958 P.2d 128, 138–43. "[T]he public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Id.* at ¶ 17, 958 P.2d at 141 (quoting *Street v. New York*, 394 U.S. 576, 592, 89 S.Ct. 1354, 1366, 22 L.Ed.2d 572 (1969)).

19. The pertinent terms of Art. 2, § 22, Okl. Const., include:

 "Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." * * *

20. *Michigan v. Long*, 463 U.S. 1032, 1037–42, 103 S.Ct. 3469, 3474–77, 77 L.Ed.2d 1201 (1983). *See also Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975).

21. 1999 OK 49, ¶ 11, 981 P.2d 321, 325.

22. *Supra* note 8.

breach on which the claim's gravamen stood grounded.

## SUMMARY

¶ 12 The *Burk* liability for on-the-job sex discrimination, even when perceived to be **status- or gender-based**, does not differ from any **act-grounded** legal accountability. Whether act or status might be deemed implicated, the *Burk* claim's actionable character is anchored *solely* in the employer's discharge that is in breach of ***Oklahoma's public policy*** for which (a) there is no statute-crafted remedy or (b) the available statutory remedy is not co-extensive with that provided for like or similar work-related harms.