Dear Representative Claunch,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May the State House of Representatives terminate the employment of an at-will House employee who files for candidacy for a state elective office?
¶ 1 You ask about the employment conditions for an employee of the State House of Representatives. It is our understanding that in April 2004, the Speaker of the House issued a written policy which provided that "no legislative employee be permitted to continue employment after the date the employee files as a candidate for state office with the State Election Board."[1] The policy applies to all employees of the State House of Representatives. Your question arises from this written policy and involves both statutory and constitutional implications. We begin this Opinion with a discussion regarding the statutory employment law implications followed by a discussion of the constitutional issues raised.
 I. Unclassified State Employment
¶ 2 Under the Oklahoma Personnel Act, 74 O.S. 2001 Supp. 2003, §§ 840-1.1-840-6.9, State employees are designated as falling within either "classified" or "unclassified" service. 74 O.S. 2001, §§ 840-1.3[74-840-1.3](6), (27). Employees who are in "classified" service positions enjoy certain employment rights which are not afforded employees holding "unclassified" service positions. Unclassified service employees serve at the pleasure or will of the appointing authority and may be separated "at any time with or without cause." [2] 74 O.S. Supp. 2003, § 840-5.1A[74-840-5.1A](A). In fact, it is statutorily mandated that "[n]o provision of the Oklahoma Personnel Act shall be construed as granting any property interest in employment to any unclassified service employee." Id.
¶ 3 Employees in classified service positions are under the jurisdiction of the Oklahoma Merit System of Personnel Administration ("Merit System"). 74 O.S. 2001, § 840-1.3[74-840-1.3](6). Those in unclassified service positions, however, are exempt from the Merit System with certain exceptions. Id. §§ 840-5.1, 840-2.9(A); 74 O.S. Supp. 2003, § 840-2.5[74-840-2.5](B). Unclassified service employees of the State House of Representatives are specifically exempt from the Merit System regulations regarding involuntary leave or furlough. 74 O.S. 2001, § 840-5.1[74-840-5.1]. Rather, they are subject to involuntary leave or furlough plans imposed by the Speaker of the House. Id.
¶ 4 Oklahoma law expressly prohibits a classified service employee from becoming a candidate for an elective office in a partisan election. 74 O.S. 2001, ch. 62 app. 257:10-1-4(a)(2). On the other hand, no Oklahoma law expressly forbids an unclassified service employee from becoming a candidate for an elective office. As cited above, however, unclassified service employees may be terminated from employment with or without cause.
¶ 5 Oklahoma law allows the tort of wrongful discharge when an at-will employee is discharged in violation of public policy.Burk v. K-Mart Corp., 770 P.2d 24, 28 (Okla. 1989); Clintonv. State ex rel. Logan County Election Bd., 29 P.3d 543, 545
(Okla. 2001). This type of claim, however, is precluded if an adequate state or federal statutory remedy exists to protect the Oklahoma public policy goal.[3] Id. The existence of a public policy and the adequacy of the statutory remedy are questions of law to be determined by the court. Id. at 546.
¶ 6 Though research has revealed no Oklahoma case precisely on point, the Ohio Supreme Court, in considering a statute similar to Oklahoma's, denied an unclassified service employee's claim for wrongful discharge when she was fired for running for office.Painter v. Graley, 639 N.E.2d 51, 57 (Ohio 1994). The court found that the statutory at-will designation precluded finding a public policy exception to the at-will doctrine for unclassified service employees. Id. If applied to your question, this reasoning supports the validity of the discharge of a State House of Representatives unclassified service employee for the reason that the employee filed for partisan elective office.
¶ 7 To summarize, no express statutory provisions preclude the termination of employment of an unclassified service employee for the sole reason that the employee has filed for a partisan elective office. Likewise, no Oklahoma case has found that it is a public policy violation to terminate a State employee in an unclassified service position for the sole reason that the employee has filed for candidacy. Next, we turn to a discussion of the constitutional issues raised by the situation.
 II. Constitutional Issues
¶ 8 Your question raises First Amendment issues related to the rights of free speech and political affiliation. In other words, is it a violation of the First Amendment of the United States Constitution for the House of Representatives to fire an at-will employee for becoming a candidate for elective office?
¶ 9 In 1973, the United States Supreme Court upheld the constitutionality of Oklahoma's statute prohibiting classified service employees from running for partisan elective office.Broadrick v. Oklahoma, 413 U.S. 601, 618 (1973). The Court found that the state's interest in maintaining a government workforce free from political pressures outweighed the individual's First Amendment rights of free speech and political affiliation. Id. at 606. The Court also found that the statute's limit of the prohibition on candidacy to classified service employees did not violate the Equal Protection Clause of the Fourteenth Amendment. Id. at 607 n. 5.
¶ 10 Courts have applied separate tests to determine the constitutionality of actions infringing upon First Amendment free speech and political affiliation rights. The Tenth Circuit Court of Appeals, however, has held that the test for political affiliation does not apply in a case where the person's political activity is candidacy for elective office. Jantzen v. Hawkins,188 F.3d 1247, 1252 (10th Cir. 1999). The Jantzen case originated in Canadian County, Oklahoma during a sheriff's election. Id. at 1250. The sheriff advised his employees that if anyone ran for office against him, openly opposed him, or was disloyal to him, they would be fired. Id. When one of the deputy sheriffs decided to run against him, the sheriff fired the deputy sheriff. Id. Additionally, three employees who campaigned in support of the deputy sheriff were terminated when the sheriff won reelection. Id.
¶ 11 The four terminated employees brought an action claiming that their First Amendment rights of political association and free speech were violated. Id. at 1251. The Tenth Circuit distinguished between the deputy sheriff's candidacy and the employees who merely supported the deputy sheriff's campaign.Id. at 1252. The court found that the deputy sheriff's right of political association was not violated because "[t]he right to political affiliation does not encompass the mere right to affiliate with oneself" as a candidate. The court, however, did find a material issue of fact whether political affiliation was a motivating factor in terminating the other three employees for supporting the deputy sheriff's campaign. Id.
¶ 12 The court then analyzed whether the termination of the deputy sheriff violated the deputy sheriff's right of freedom of speech. Using the four-part Pickering/Connick[4] test, the court stated and applied the following factors:
 1. Whether the speech in question involves a matter of public concern.
 2. If so, we must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace.
 3. Employee must show the speech was a substantial factor driving the challenged governmental action.
 4. If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech.
Jantzen, 188 F.3d at 1257.
¶ 13 The test has two prongs. The first two factors are questions of law for the court; the remaining two factors are questions of fact for a jury. In applying the test, the court found that the deputy sheriff's political speech, i.e., his candidacy for office, related to matters of public concern. Id.
(citations omitted). But, with regard to the second prong, the court found that:
 [T]here was specific evidence to support [the Sheriff's] reasonable prediction that when a subordinate runs for office against his or her boss, such a candidacy risks undermining that office's efficient performance.
Id. at 1258. Consequently, the court determined that the deputy sheriff's free speech interest did not outweigh the government's interest in efficient law enforcement, and affirmed summary judgment in favor of the sheriff.[5] Id.
 ¶ 14 Jantzen was determined by its specific facts. ThePickering/Connick test necessarily involves balancing facts specific to a given situation. In its application to your particular question, a court would balance the unclassified service employee's free speech rights against the House of Representatives' goal of maintaining an efficient and effective operation. Such balancing is outside the scope of an Attorney General's Opinion and, therefore, a conclusive answer to your question is not possible. 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. No Oklahoma statute prohibits terminating a State House of Representatives at-will employee because the employee files for candidacy for an elective state office.
 2. The Tenth Circuit Court of Appeals has upheld the termination of an at-will deputy sheriff who filed for the elective office of sheriff. See Jantzen v. Hawkins, 188 F.3d 1247, 1258 (10th Cir. 1999).
 3. Whether any particular termination violates an employee's First Amendment rights of free speech can only be determined by application of the Pickering/Connick balancing test. See Pickering v. Bd. of Educ., 391 U.S. 563 (1968); Connick v. Myers, 461 U.S. 138 (1983). Application of the balancing test involves factual determinations outside the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GRETCHEN ZUMWALT-SMITH Assistant Attorney General
[1] Memorandum from Speaker Larry E. Adair, to the Staff of the House of Representatives (Apr. 20, 2004) (on file with the Attorney General's Office).
[2] Individuals which occupy unclassified service positions are commonly referred to as "at-will" employees.
[3] In Clinton, an at-will employee filed a wrongful discharge action alleging that she was terminated because she was pregnant. Clinton, 29 F.3d at 544. In answering a certified question from the federal court, the Oklahoma Supreme Court held that an at-will employee may not bring a Burk tort claim when the employee has an adequate federal statutory remedy for the wrongful discharge. Id. at 546.
[4] This test was enunciated by the United States Supreme Court in Pickering v. Board of Education, 391 U.S. 563 (1968), andConnick v. Myers, 461 U.S. 138 (1983).
[5] In applying the test, Jantzen noted the similarity ofHorstkoetter v. Department of Public Safety, 159 F.3d 1265
(10th Cir. 1998). Jantzen, 188 F.3d at 1257. In Horstkoetter,
Oklahoma Highway Patrol troopers challenged the policy prohibiting placing campaign signs in their yards.Horstkoetter, 159 F.3d at 1268. The Tenth Circuit held that the policy met the second prong of the Pickering/Connick test because it "promote[d] efficiency and harmony among law enforcement personnel." Id. at 1274.