**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GABRIELLE SMITH,

      Plaintiff-Appellant,

      v.

STATE OF OKLAHOMA EX REL.
TULSA COUNTY DISTRICT
ATTORNEY,

      Defendant-Appellee.

No. 05-5116

(N. D. Oklahoma)

(D.C. No. 03-CV-777-EA(C))

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BRISCOE**, Circuit Judges, and **ROBINSON**, District Judge.[**]

---

Gabrielle Smith worked as an investigator with the Tulsa County District

Attorney's Office from 1997 until November 8, 2002, when she was discharged

by District Attorney Tim Harris. As grounds for his decision, Mr. Harris

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable Julie Robinson, United States District Judge for the District of Kansas, sitting by designation.

explained that his office had suffered budget cuts and that, as a result, he was forced to discharge several employees whose performance was deficient, including Ms. Smith.

Following her discharge, Ms. Smith filed this wrongful termination action against the Tulsa County District Attorney's Office, alleging gender discrimination claims under (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, and (2) Oklahoma law. The district court granted summary judgment to the District Attorney's Office on both claims.

Ms. Smith now contends that she was performing her job adequately and that the reasons offered by Mr. Harris for her discharge were pretexts for gender discrimination. As to her Oklahoma wrongful discharge claim, she contends that she should be allowed to proceed to trial because Title VII is not an adequate remedy. For the reasons set forth below, we are not persuaded by Ms. Smith's arguments, and we therefore affirm the district court's decision.

## I. BACKGROUND

Ms. Smith began her employment with the Tulsa County District Attorney's Office in 1996, when she was hired as a secretary. In September 1997, District Attorney Bill LaFortune promoted her to a position as an investigator in the Juvenile Division. After Mr. Harris became the District Attorney in January 1999, he assigned Ms. Smith to the Special Investigation Division of the Tulsa

Police Department. There, Ms. Smith worked with the juvenile gun court and the gangs unit. Finally, in mid-2000, Mr. Harris reassigned Ms. Smith to the Felony Investigation Unit in the downtown office, where Ms. Smith was supervised by his chief investigator, Don Bell.

Mr. Harris terminated Ms. Smith's employment on November 8, 2002. On that day, First Assistant District Attorney James Brandon and Chief Investigator Bell met with Ms. Smith. Mr. Brandon told her that "her services were no longer required in the district attorney's office" and that he was not authorized to give her any further explanation. Aplt's App. vol. II, at 587. On November 20, 2002, Mr. Harris wrote Ms. Smith a letter stating that "[o]ften times I am placed in the position of making business decisions [o]n behalf of this office, especially during extremely difficult financial times" and that "[d]ue to these financial conditions and continued state budget cuts, it was necessary to evaluate a number of different positions in the office." Id. at 751.

Subsequently, Mr. Harris offered a more detailed explanation of his reasons for terminating Ms. Smith's employment. He stated in deposition testimony that, in November 2002, his office's budget was being cut and he "was looking at personnel that [were] not moving the district attorney's office forward." Id. vol. I, at 88. After meeting with the First Assistant District Attorney and the Chief Investigator, Mr. Harris concluded that "Ms. Smith did not have the skills to be able to perform her investigative functions," and that "her attitude towards other

employees and other people in the office was rude and condescending and curt and arrogant." Id. at 87-88. Mr. Harris further explained that Ms. Smith had refused to file charging papers on behalf of the District Attorney's Office and had been disciplined by the Chief Investigator at least three times for that refusal. Moreover, in Mr. Harris's view, Ms. Smith was not a team player and was "not the kind of face that [he] wanted to have in the community" (i.e. "somebody who, with their tone of voice, their speech, was arrogant and condescending, extremely demanding"). Id. at 88. Finally, Mr. Harris added, many of his other employees did not want Ms. Smith to be placed in their divisions.

Following her discharge, Ms. Smith filed a charge of gender discrimination with the Equal Employment Opportunity Commission (EEOC). During the EEOC's investigation, Mr. Harris provided specific examples of Ms. Smith's work performance that he deemed deficient.

After the EEOC issued a Dismissal and Notice of Rights, Ms. Smith filed this action in the federal district court against the District Attorney's Office. She asserted that her discharge violated the gender discrimination provisions of Title VII, as well as Oklahoma public policy.

According to Ms. Smith, the explanations offered by Mr. Harris for her discharge were pretexts for gender discrimination. In support of that theory, she contested his assertions that her performance as an investigator was deficient. She also alleged that she had been treated less favorably than male

employees of the District Attorney's Office, who received counseling and opportunities to improve their work performance before being subjected to adverse employment actions. Additionally, Ms. Smith pointed to the evolving explanations of her discharge, arguing that these explanations indicated that the initial reasons offered by Mr. Harris were pretextual.

The district court granted summary judgment to the District Attorney's Office on both of Ms. Smith's claims. As to her Title VII claim, it concluded that Ms. Smith had failed to establish a prima facie case of gender discrimination and had failed to offer colorable evidence of pretext. On her state law claim, the court applied an Oklahoma decision holding that an at-will employee may not assert such a claim if she "'has an adequate federal statutory remedy for the wrongful discharge.'" Aplt's App. vol. III, at 1218 (Dist. Ct. Order, filed April 15, 2005) (quoting Clinton v. State ex rel. Logan County Election Bd., 29 P.3d 543, 546 (Okla. 2001)).

## II. DISCUSSION

On appeal, Ms. Smith argues that the district court erred in granting summary judgment to the District Attorney's Office on both her Title VII and state law claims. We review the district court's decision de novo, applying the same standards as the district court under Fed. R. Civ. P. 56. Orr v. City Of Albuquerque, 417 F.3d 1144, 1148 (10th Cir. 2005). Summary judgment is

warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence and the reasonable inferences drawn from it in the light most favorable to the nonmoving party. Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1310 (10th Cir. 2006). Nevertheless, the party opposing summary judgment "must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).

### A.  Title VII Claim

Title VII bars gender discrimination with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). When, as here, a plaintiff employee relies on circumstantial evidence to prove her claim, we apply the familiar framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-07 (1973). See, e.g, Timmerman v. U.S. Bank, N.A.,483 F.3d 1106, 1113 (10th Cir. 2007) (applying McDonnell Douglas).

Under that framework, the plaintiff-employee must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U. S. at 802. If she makes that showing, the burden shifts to the defendant-employer to state a legitimate,

nondiscriminatory reason for the challenged employment action. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005). Finally, in order to avoid summary judgment, the employee must then offer evidence that the employer's proffered reason was a pretext for discrimination. Id.

Here, Ms. Smith challenges the district court's conclusions that she failed to establish a prima facie case and failed to offer colorable evidence of pretext. We consider each argument in turn.

1. Prima facie case

"The Supreme Court recognized in McDonnell Douglas that the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." Id. at 1099. As a result, this court has set forth varying standards for a prima facie case of discriminatory discharge under Title VII. See Aplt's App. vol. III, at 1202-03 (discussing varying standards); see also Sorbo v. United Parcel Service, 432 F.3d 1169, 1173-74 (10th Cir. 2005) (same); Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005) (same). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1227 (10th Cir. 2000) (internal quotation marks omitted).

Here, the district court said, "the most appropriate test is [either] the three-part test of Martin [v. Nanny & The Newborns, 3 F.3d 1410 (10th Cir. 1993)] or a four-part test as set forth in Vaughn v. Edel, 918 F.2d 517 (5th Cir. 1990)." Aplt's App. vol. III, at 1203. Ms. Smith does not argue for a particular standard, while the District Attorney's Office contends that the Martin three-part standard should be applied. See Aple's Br. at 37-38.

We have applied the three-part Martin standard in Title VII cases in which, plaintiffs, like Ms. Smith, argue that they have been treated less favorably than similarly situated co-workers, see, e.g., E.E.O.C. v. PVNF, 487 F.3d 790, 800 (10th Cir. 2007), and we therefore agree with the District Attorney's Office that the Martin three-part standard is appropriate. Under that standard, in order to establish a prima facie case of discrimination, Ms. Smith must demonstrate that she (1) belongs to a class of employees protected by Title VII; (2) was qualified for her job; and (3) was terminated under circumstances giving rise to an inference of discrimination. Martin, 3 F.3d at 1417; see also Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1225 n.11 (10th Cir. 2006) (applying the same standard); Salguero v. City of Clovis, 366 F.3d 1168, 1175 (10th Cir. 2004) (same); see generally Sorbo, 432 F.3d at 1173 (stating that "several cases involving adverse action prompted by unsatisfactory performance or misconduct have framed the [third] element . . . broadly, as requiring a showing of

circumstances giving rise to an inference of discrimination") (internal quotation marks omitted).

Applying this standard, the district court concluded that Ms. Smith had failed to establish a prima facie case. The court addressed the second and third Martin prongs.

As to the second prong, whether Ms. Smith was qualified, the court said that Ms. Smith had failed to establish that she was performing her job satisfactorily. Ms. Smith's evidence of satisfactory performance—evaluations by two of her supervisors and a co-worker—did not involve the same time period during which the majority of asserted performance deficiencies occurred.

As to the third prong, the court stated that Ms. Smith had failed to offer evidence that she was treated less favorably than similarly-situated male employees. The court acknowledged that Ms. Smith had offered evidence that, in contrast to the manner in which she was treated, some male employees received counseling before they were subjected to adverse action. However, the court reasoned, these male employees were not similarly situated: unlike Ms. Smith, they were not terminated in response to budget cuts and some of them had not committed multiple infractions, as Ms. Smith had done.

On appeal, Ms. Smith challenges both of the district court's conclusions regarding her prima facie case. As to her work performance, she invokes her own testimony that she was performing her job satisfactorily, as well as our decision

in <u>MacDonald v. E. Wy. Mental Health Ctr.</u>, 941 F.2d 1115 (10th Cir. 1991). There, we stated that "a plaintiff may make out a prima facie case of discrimination . . . by credible evidence that she continued to possess the objective qualifications she held when she was hired or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time." <u>Id.</u> at 1121 (internal citations omitted). As to the allegedly more favorable treatment received by male employees, Ms. Smith contends that the record contains evidence from which a reasonable juror could conclude that male employees accused of deficient performance received opportunities to improve that she did not.

Mindful that the plaintiff's burden at this first stage is "not onerous," <u>Plotke</u>, 405 F.3d at 1099 (internal quotation marks omitted), we conclude that Ms. Smith has established a prima facie case. As a woman, she falls within a class protected by Title VII. Moreover, viewed in the light most favorable to Ms. Smith, her five-year tenure as an investigator, her own assessment of her performance, and the fact that the District Attorney's Office did not formally reprimand, suspend, or discharge her for the alleged performance deficiencies until budget concerns arose in late 2002 could all support her contention that she was performing her job adequately.

Finally, as to the third element of the prima facie case—whether she was terminated under circumstances giving rise to an inference of discrimination—

-10-

Ms. Smith's testimony that she did not receive the counseling given to others supports her contention that she was treated differently than male investigators. Although the district court concluded that these male employees were not similarly situated, its analysis turned on an assessment of the reasons offered by the District Attorney for Ms. Smith's termination (i.e., that budget cuts justified the discharge of a deficient employee). However, at the prima facie stage, "a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant." E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000); see also Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1469-70 (10th Cir. 1992) (stating that "the employer's reasons for the adverse action are not appropriately brought as a challenge to the sufficiency of the plaintiff's prima facie case") (alteration and internal quotation marks omitted).

We therefore proceed to the final two stages of the McDonnell Douglas inquiry, examining the reasons given by Mr. Harris for the discharge and Ms. Smith's contention that those reasons were pretexts for gender discrimination.

2.  Evidence of Pretext

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant-employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802.

When the plaintiff meets this burden, the court's "factual inquiry then proceeds to a new level of specificity." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981). The presumption of discrimination established by the prima facie showing "simply drops out of the picture," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), and the plaintiff must establish that her employer discriminated on the basis of gender. Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1124 (10th Cir. 2005). The plaintiff may meet this burden by demonstrating that the reason for the discharge proffered by the employer is a pretext for discrimination. Horizon/CMS Healthcare Corp., 220 F.3d at 1191.

Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted). In support of a claim of pretext, a plaintiff may offer evidence of differential treatment, indicating that the employer "treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness." Swackhammer v. Sprint/United Mgmt Co., No. 05-3222, --- F.3d ----, 2007 WL 1969672, at * 5 (10th Cir. July 9, 2007) (quoting Kendrick, 220 F.3d at 1230). Alternatively, a plaintiff may offer direct evidence that the employer's stated reason for the

discharge is false. "Evidence of pretext may also take a variety of other forms." Id.

Nevertheless, "it is not *always* permissible for the factfinder to infer discrimination from evidence that the employer's explanation is unworthy of belief." Id. If there is conclusive evidence of some other, nondiscriminatory reason for the plaintiff's discharge or "'if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred,' the fact that the employer's explanation was unworthy of belief would no longer be sufficient to create an inference of discrimination." Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, (2000)). Additionally, if the plaintiff's evidence that she was treated differently than other, similarly-situated employees is "trivial or accidental or explained by a nondiscriminatory motive," this evidence does not create an inference of discrimination. Kendrick, 220 F.3d at 1232.

In this appeal, Ms. Smith invokes four categories of evidence in support of her pretext argument. According to Ms. Smith, this evidence establishes that the district court erred in granting summary judgment against her.

a. Treatment of Male Investigators

Ms. Smith cites record evidence that three male investigators who were discharged by Mr. Harris were first reprimanded and then counseled about the

deficiencies in their work performance. Ms. Smith maintains that these employees were thus afforded an opportunity to improve before they were terminated. In contrast, Ms. Smith testified that she "'had not been reprimanded about anything'" and "'did not get that privilege to be talked to about anything if there was a problem.'" Aplt's Br. at 53-54 (quoting Aplt's App. vol. II, at 506). Viewed in the light most favorable to her, Ms. Smith argues, this evidence supports a finding that she was treated differently than similarly-situated male employees and thus supports her claim of pretext.

We agree with the district court that this evidence is not sufficient to support Ms. Smith's pretext argument. As an initial matter, the record does not suggest that the District Attorney's Office had a progressive discipline policy requiring all employees to be counseled and subjected to milder discipline before discharge. To the contrary, Mr. Harris testified that decisions regarding employee discipline were made on a case-by-case basis, and Ms. Smith has not rebutted that testimony. Thus, even accepting Ms. Smith's testimony that she was never counseled about her work performance before she was terminated, that testimony does not establish that Mr. Harris violated an office policy.

More importantly, Ms. Smith has failed to establish that these three male investigators were similarly situated. Mr. Harris offered testimony that Ms. Smith's termination was triggered by budget cuts, a factor not involved in the termination of the male investigators. Mr. Harris explained, "[W]hen you are

-14-

flush and you have enough money, you can carry your weaker employees along with you. . . . But . . . once your budget [be]comes tighter and tighter and tighter and tighter, you don't have the luxury of kind of bringing these people along with you in hopes that they will succeed. . . . [N]ow that I don't have money, . . . I have to make the tough decisions." Aplt's App. vol. II, at 535-36; see also E.E.O.C. v. Flasher Co., 986 F.2d 1312, 1320 (10th Cir. 1992) (noting that differences in the treatment of employees may sometimes be explained by the fact that "the events occurred at different times when the company's attitudes toward certain infractions were different").

Moreover, Ms. Smith's testimony that she was never counseled about the deficiencies in her work does not address the key question of whether Mr. Harris acted with discriminatory intent. In evaluating evidence of pretext, we do not ask "whether the employer's proffered reasons were wise, fair or correct, but whether [he] honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City and County of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotation and alterations omitted). Here, Mr. Harris testified that Don Bell, his chief investigator, told him that he had counseled Ms. Smith on her performance "numerous times[,]" Aplt's App. vol. I, at 97, and Mr. Bell himself testified that he had counseled Ms. Smith. Similarly, George Nelson, the chief of the Juvenile Division, told Mr. Harris that he had talked to Ms. Smith about her "attitude problem." Id. at 82. Thus, Ms. Smith's testimony that she was never counseled

-15-

does not undermine Mr. Harris's contention that he had an honest, good-faith belief that such counseling had occurred. Cf. Furr v. Seagate Techn. Inc., 82 F.3d 980, 988 (10th Cir. 1996) (stating that "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance"); see also E.E.O.C. v. Total Sys. Servs, Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (observing that an employer is entitled to rely on good-faith beliefs about employee misconduct).

b.  Budget Cuts

Ms. Smith also contends that two of Mr. Harris's own statements indicate that the alleged budget cuts were pretextual.

First, she points to the following statement in the agenda for an October 4, 2002 staff meeting (roughly a month before she was terminated):

> Before I get started I wanted to take a few minutes to talk to you about our Budget.  I know that you are all reading the newspaper and hearing the news on the television about all the shortage of funds and offices are being furloughed and I just want to tell you not to let fear get any rumors started about us being furloughed or rumors about layoffs.  As of today, we have our budget in place and in good shape through next June, 2003.

Aplt's App. vol. I, at 377.

Second, Ms. Smith relies on the following exchange in Mr. Harris's deposition:

Q: [by Ms. Smith's counsel]:  Are you testifying that in better budgetary times, there may have been alternatives to termination for these employees?

-16-

| A: [by Mr. Harris]: | It comes to a point. It's how bad is their performance overall, are they assisting us, moving the whole team forward or are they a drag on the team . . . . |
|---|---|
| Q: [by Ms. Smith's counsel]: | Just let me ask the question. In better budgetary times, would Ms. Smith have been given an opportunity to correct her performance? |
| A: [by Mr. Harris]: | No. |

Id. at 77.

Finally, Ms. Smith cites a November 8, 2002 memorandum from First Assistant District Attorney James Brandon. The memorandum states that "there have been many issues related to [Ms.] Smith during my time here" and that "the most recent that was brought to my attention was the failure to sign charges and get them to the Court Clerk's office in a timely fashion." Aplt's App. vol. II, at 863. However, Mr. Brandon's memorandum does not mention budget cuts as grounds for her discharge.

In our view, this evidence does not support Ms. Smith's contention that Mr. Harris's reliance on budget cuts was pretextual. Mr. Harris testified that, when his office's budget began to get cut dramatically, he discharged some "weak players on the team," including Ms. Smith and two male Assistant District Attorneys. Aplt's App. vol. II, at 535. Ms. Smith has offered no evidence to controvert the existence of these funding reductions. Mr. Harris's statements in

the October 4, 2002 agenda that the budget was "in place" and "in good shape" and that employees should not fear layoffs or furloughs were made to his staff as a whole and demonstrate an intent to reassure the majority of them. The statements are not inconsistent with the existence of budget cuts that triggered the discharge of a few employees, including Ms. Smith, whose performance was deficient.

Mr. Harris's response to the hypothetical question about whether Mr. Smith would have been given an opportunity to correct her performance "in better budgetary times" is similarly insufficient to demonstrate pretext. As noted above, when he decided to discharge her, Mr. Harris reasonably believed that Ms. Smith did receive counseling about the deficiencies in her performance. Mr. Harris's statement that she would not have been given an opportunity to correct her performance indicates only that, after learning more details about the deficiencies in her work, Mr. Harris determined that Ms. Smith's work-related problems were "long going" and were unlikely to be corrected by counseling or other measures. Id. at 536. His statement does not undermine his reliance on the budget cuts as a basis for her termination.

Finally, the fact that Mr. Brandon's November 8, 2002 memorandum does not mention the budget cuts is not significant. Mr. Brandon explained in his deposition that he did not make the decision to discharge Ms. Smith. His role "was providing information to the decision-maker [Mr. Harris]," and he therefore

-18-

offered examples of her deficient performance. Aplt's App. vol. I, at 116. Thus, the November 8 memorandum reveals Mr. Brandon's limited role and does not support Ms. Smith's claim of pretext.

### c. Deficiencies in Work Performance

Ms. Smith further argues that a jury could conclude that Mr. Harris acted unreasonably in relying on the statements of various employees regarding the deficiencies in her work. She maintains that Mr. Harris failed to investigate the truth or accuracy of the complaints about her and that this failure also constitutes evidence of pretext. As an example of his alleged failure to investigate, she cites Mr. Harris's testimony that he relied on a complaint by James Manning. She asserts that Mr. Manning testified that he did not make this complaint until after her discharge, thus, in her view, undermining Mr. Harris's account of his investigation of her work performance.

Additionally, Ms. Smith contends that there are disputed facts regarding several of the incidents invoked by Mr. Harris as examples of her deficient performance. As to several of these incidents, Ms. Smith disputes that she performed inadequately. As to others, she cites her own testimony that she never received counseling or an opportunity to improve.

After thoroughly reviewing the record, we cannot agree with Ms. Smith that there is colorable evidence of pretext. In his deposition testimony, Mr. Harris explained that after meeting with the First Assistant District Attorney and the

-19-

Chief Investigator, he concluded that Ms. Smith did not have the skills necessary to perform investigative functions; that she had demonstrated a rude, condescending, curt, and arrogant attitude toward other employees; that she had refused to file charging papers on behalf of the District Attorney's Office; and that she had been disciplined by the Chief Investigator at least three times for that refusal. Mr. Harris reported that many employees had stated that, in light of these difficulties, they did not want Ms. Smith placed in their divisions.

As the district court observed, Mr. Harris's explanation is supported by the testimony of more than twenty employees of the District Attorney's Office. Some of these employees cited specific examples of Ms. Smith's deficient performance; others, including the Chief Investigator and the Chief of the Bogus Check Division, confirmed that they had requested that Ms. Smith not be assigned to their division. Others characterized her attitude toward her fellow employees in a manner similar to Mr. Harris. This testimony demonstrates that Mr. Harris's determination regarding the deficiencies in Ms. Smith's work performance was reasonable.

The evidence invoked by Ms. Smith does not undermine this conclusion. For example, the dispute about whether Mr. Harris relied on a complaint from Mr. Manning concerns only the chain of communication about a complaint regarding Ms. Smith: Mr. Harris indicated that Mr. Manning complained to him directly while Mr. Manning stated that he complained to his immediate supervisor, who relayed the complaint up the chain of command until it reached Mr. Harris.

Nevertheless, no matter how the complaint reached Mr. Harris, it is undisputed that he received information from Mr. Manning, and from other employees, that Ms. Smith was not performing her job adequately.

### d.   Changing Reasons for Termination

Finally, Ms. Smith contends that, over time, Mr. Harris offered different reasons in support of his decision to discharge her and that these changing reasons constitute evidence of pretext.  As the district court explained, on the day that she was discharged, neither Mr. Harris nor his staff offered Ms. Smith an explanation. On November 20, 2002, Mr. Harris sent Ms. Smith a letter stating that "[d]ue to these financial conditions and continued state budget cuts, it was necessary to evaluate a number of different positions in the office."  Aplt's App. vol. II, at 751.  In responding to requests for information during the EEOC investigation, Mr. Harris referred to budget cuts and subsequently referred to deficiencies in Ms. Smith's work performance.  Then, during discovery in the district court proceedings, Mr. Harris provided more examples of her deficient performance. Finally, in the summary judgment papers, Mr. Harris offered more evidence about those deficiencies.

In some circumstances, a change in an employer's explanation of the reasons for an adverse personnel action may constitute evidence of pretext Jaramillo, 427 F.3d at 1311.  However, "the mere fact that [an employer] has offered different explanations for its decision does not create a genuine question of pretext."  Id.  In determining whether a changing explanation is sufficient to

permit an inference of pretext, we consider (1) the timing of the change in explanation and (2) the evidence supporting the newly-proffered explanation.  Id.

Here, we agree with the district court that the explanations offered for Ms. Smith's discharge are "not part of a long line of 'new' reasons but an increasingly detailed explanation for the reasons [Mr. Harris] articulated in general terms soon after [Ms. Smith] was terminated: budget cuts, combined with her attitude and performance problems."  Aplt's App. vol. III, at 1214.  Mr. Harris offered unrebutted testimony that the budget cuts triggered both his examination of underperforming employees and his decision to discharge Ms. Smith.  Before he discharged her, he received information about Ms. Smith's deficient performance from his staff.  The fact that the District Attorney's Office began to marshal evidence about those deficiencies as it prepared for anticipated litigation does not constitute colorable evidence of pretext.

3.  Conclusion

Because Ms. Smith failed to offer evidence from which a reasonable factfinder could conclude that the reasons for her termination were a pretext for gender discrimination, we conclude that the district court properly granted summary judgment to the District Attorney's Office on her Title VII claim.

### B. State Law Claim

Ms. Smith also asserted a claim for wrongful discharge under Oklahoma law.  Her claim is based upon Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989),

which held that an at-will employee may assert a claim that she was terminated in violation of "a clear and compelling public policy." Id. at 29. As evidence of Oklahoma's public policy, Ms. Smith invokes a state statue barring gender discrimination. Okla. Stat. tit. 25, § 1302(A).

In applying Burk, the Oklahoma Supreme Court has held that a wrongful discharge claim is precluded "[w]hen an employer discharges a terminable-at-will employee based on the employee's status and the reason for the discharge violates Oklahoma's clear and compelling public policy, but the employee has an adequate federal statutory remedy for the wrongful discharge." Clinton v. State ex rel. Logan County Election Bd., 29 P.3d 543, 544 (Okla. 2001). The district court granted summary judgment to the District Attorney's Office on the grounds that Ms. Smith "has an adequate statutory remedy under Title VII." Aplt's App. vol. III, at 1218.

Ms. Smith now argues that her remedy under Title VII is not adequate because that statute limits the amount of recovery of compensatory and punitive damages. See 42 U.S.C. § 1981a(b)(3). She does not cite, nor have we found, a body of law defining what constitutes an "adequate" remedy under Clinton.

Nevertheless, in this case, we need not decide whether Title VII is an adequate remedy. Even assuming that, under Clinton, Title VII does not provide an adequate remedy to Ms. Smith, the District Attorney's Office is still entitled to summary judgment. As we have explained above, Ms. Smith has failed to offer colorable evidence of gender discrimination. As a result, a reasonable factfinder

-23-

could not conclude that Mr. Harris violated Oklahoma public policy in discharging her.

### III. CONCLUSION

We therefore AFFIRM the district court's grant of summary judgment to the District Attorney's Office on Ms. Smith's Title VII and state law claims.

Entered for the Court,

Robert H. Henry
United States Circuit Judge